### James Edwards v. Jesse K. Sanborn.

In an action for the non-delivery by defendant, at the time agreed upon, of an article purchased and paid for by plaintiff, the jury may, without proof of special damage, award the plaintiff, as damages, interest on the price of the article from the time it should have been, until it actually was, delivered.

*Heard May 7th. Decided May 19th.*

Error to Wayne Circuit.

The action was assumpsit, by Edwards against Sanborn. The declaration contained two counts, the first of which alleged that on July 21st, 1855, plaintiff bought of defendant a circular saw mill at the price of $435, to be paid for as follows: $233 in plaintiff's note at six months from August 15th, 1855, with interest; $202 in cash, August 15th, 1855, which was paid when due; and in consideration thereof defendant promised to ship the said saw mill from Sandy Hill, New York, where defendant resided, to plaintiff, at Ontonagon, on the day last aforesaid. Breach, that defendant did not ship the said saw mill as agreed, but neglected to do so for two months there-

after, by reason whereof it did not reach its place of destination during the season of navigation, but was detained through the whole winter, and until the spring of 1856, whereby plaintiff suffered great damages in the hiring of laborers who remained idle, in expenses, and money laid out in preparing his ground and buildings for immediate use of said circular saw mill, and in stocks of provisions which became useless; and had been deprived of large gains and profits which he might and would have made in the business of sawing lumber, for which said saw mill was intended, and for which plaintiff had prepared at great expense.

The second count alleges, that in consideration that plaintiff, on August 25th, 1855, had bought of defendant a circular saw mill, he (the defendant) undertook and promised forth with, to ship the same to plaintiff by Griffith's Western Line, to Detroit, and from thence, by McKnight's Lake Superior Line, to Ontonagon. Breach, that defendant did not forthwith ship the same by the said lines, or in any other manner, but neglected to do so for the space of two months, by means whereof the said saw mill was further delayed and detained so long in reaching the city of Detroit, that it could not be shipped to plaintiff at Ontonagon, by McKnight's Lake Superior Line, during the then season of navigation, but was shipped, without the knowledge or consent of the plaintiff, on board a sail vessel, so late in the season that it did not reach Ontonagon until the May following. By means whereof plaintiff suffered damages as alleged in the first count.

Defendant pleaded the general issue.

On the trial, the contract being proved, and the payment, as alleged by plaintiff — as to which there does not appear to have been any contest — plaintiff introduced, among other evidence to show special damages, a number of depositions, as follows (all that portion of each of which in italics being objected to by the defendant, and excluded by the court):

*William S. Bliss* testified that during the summer of 1855 plaintiff purchased lands and put up buildings for the purpose of carrying on a saw-mill business: That he employed men and made various improvements, beside the erection of buildings, for facilitating the business of sawing lumber: *That such improvements must have cost, plaintiff several hundred dollars:* That said plaintiff was very anxious, and used every exertion, to get his mill in running order before the winter months; *and deponent believes, and has no doubt, that plaintiff would have so done had it not been for the non-arrival of the machinery:* That the machinery did not arrive until May, 1856, *and that in consequence of its non-arrival in due season, plaintiff was thrown out of his legitimate employment during the winter months, besides having lost the profits which would have probably accrued from it: That, in the opinion of the witness, plaintiff sustained damages to from $500 to $1000.* Witness can not tell exactly how much land plaintiff purchased for his mill site, but it was six or eight lots. The saw-mill building was erected, covered, and partially enclosed. Witness saw as many as 250 logs on the grounds. Plaintiff built a smith shop on his lots, and made improvements on the sluice-way for the better conveyance of logs. The improvements will not pay cost unless sold for mill purposes.

*Augustus Colburn* testified that, *on account of the non-arrival of said mill, plaintiff was entirely stopped in his business of making lumber, and sustained damage to, at least, $800 or $1000.*

*James K. Paul* testified that *the plaintiff must have been damaged by the non-arrival of said machinery $1000 or $1200.*

*James Carson* testified that *the loss of the plaintiff was a serious one, in not being able to set his mill in operation, in consequence of the non-arrival of the mill. The value of pine lumber in the log in 1855 and 1856, at Ontonagon, was from $4.00 to $5.00 a thousand. When sawed, pine lumber was worth, on an average, about $14.00 a thousand at that place.*

*The cost of manufacturing would be about $3.50 a thousand. If the saw-mill had been shipped at Sandy Hill, August 25th, it would have reached Ontonagon in thirty days by the usual course of transportation. From October 5th to May 5th, the mill would cut, on an average, six thousand feet in twenty-four hours. Never saw a mill running of this kind, and from actual knowledge, can not say what, or how much it will saw. There would have been no difficulty in procuring logs to stock the mill.*

*Abner Sherman testified that plaintiff contracted the mill for the purpose of manufacturing lumber at Ontonagon. He commenced the work of getting ready for the mill about the first of August, and continued in his work of preparation until about the middle of October. He had employed, during that time, a number of hands, as carpenters, engineers, and common laborers. He had two hands, an engineer and assistant engineer, who were kept idle by the non-arrival of the mill, one of whom was idle a month, and the other about three months. The principal engineer was retained until the arrival of the last boat from Detroit, which arrived between the first and middle of November. He cost the plaintiff $60 a month, board and wages. His assistant cost in the neighborhood of $30 a month, besides board, which was $12 a month in the cheapest boarding-house in Ontonagon. According to witness' means of information, the mill would cut, on an average, from October 18th to May 18th, about seven thousand feet in twenty-four hours. The loss, from not being able to get the mill running in the fall, when he was ready for it, was more serious to plaintiff than the actual loss of dollars and cents. The disappointment threw him out of employment the whole winter. The non-arrival of the mill for six or seven months after it was to come, brought the maturity of the note given for the mill, and other obligations, before the mill could be put in running order, and he could get the means of paying for them. The consequence of this was that he had to close up his business in the spring of 1856. The mill building and black-*

*smith shop would not bring more than half what they cost. Should think the cost of the mill building was $500. Plaintiff will lose $50 by the shop, and $50 or $60 on the sluice-way. Plaintiff's credit was good, at this time, in Ontonagon.* Knows plaintiff paid his principal engineer $60 a month from what plaintiff said: thinks he has heard the engineer say so. As to the sum the assistant was to receive, witness got his knowledge from plaintiff's papers, or from the engineer. Judging from what competent men say, and from his knowledge of the power of the engine, and of other mills, witness would think this mill would cut what he has stated. Has never seen one of these mills at work.

Plaintiff also put in evidence a letter from defendant, the material portion of which is as follows:

"*Detroit*, October 1st, 1855.

"Mr. EDWARDS:—*Dear Sir:* I have rec'd yours, making inquiries for your mill. I received your money about the 28th Aug. I ordered my foreman to ship your mill next day,— your order being then on the books with other orders. I left home for two weeks, returned, and to my utter astonishment found my foreman had sent a mill to another man, he supposing he had filled my orders in regard to your mill, but instead had sent a mill whose order was on the books with yours, and with yours awaiting remittance. I immediately sent your mill, and came here to see if your engine had gone up, intending to send a mill I had here if you was to be delayed in your work by my delay; but I find your engine has not yet gone, and your mill will now be in time for you. It will reach you in two weeks, at most, which will be before you can get your engine set; and I shall have no need to send one from here."

He also gave evidence that he could have procured a boiler and engine at Ontonagon to set his mill going, if the circular saw mill had arrived.

Upon the foregoing evidence of damages, the circuit judge instructed the jury that plaintiff, under the evidence

shown by him, was entitled to nominal damage only, and
that the jury should so find; to which instruction plain-
tiff excepted.

Verdict having been rendered for plaintiff for six cents
damages, plaintiff removed the case to this court, for re-
view on the exceptions to the rejection of said evidence,
and to said instruction to the jury.

*D., S. A. & D. Goodwin,* for plaintiff in error:

How far profits lost may be allowed, is a question
much discussed, and in very many cases they have been
allowed. We think they should have been in this. These
profits should, of course, be fairly estimated by the jury,
considering all the circumstances; and those only which
would naturally have resulted but for the wrong of the
defendant.

But if not entitled to lost profits, the plaintiff was en-
titled to, at least, compensation for the loss of the use of the
mill; and this is to be fairly estimated by the jury under
all the circumstances. — 11 *Price,* 19; 20 *Eng. L. & Eq.*
410; 7 *Hill,* 62; 3 *Barb.* 424; 4 *Comst.* 288; 14 *Barb.* 611;
6 *Barb.* 419; 3 *Fos.* 171; 25 *Pa. St.* 382; *Wright,* 229;
8 *Pick.* 356; 17 *Ala.* 689; 18 *T. R.* 620; 6 *Bing. N. C.* 212;
9 *Wend.* 325; 4 *Moore,* 12; 6 *Bing.* 16; 9 *Bing.* 68; 2
*M. & W.* 519; 4 *M. & W.* 337; 13 *How.* 307; *Ibid.* 101;
5 *Mason,* 1.

The judge erred in withdrawing the question of dama-
ges from the jury. He should have submitted it to them,
with instructions as to the proper principles to govern them.
But, in fact he took the whole case from them, as if he,
instead of the jury, was himself trying the cause under
the statute. — 1 *Saund. Pl. & Ev.* 150, 401; 2 *Greenl. Ev.*
§ 255; *Chit. on Cont.* 343.

Plaintiff was entitled to at least interest on the amount
paid.

*R. P. Toms,* for defendant in error:

1. The opinions of witnesses are not evidence except on certain subjects. This case does not involve one of those subjects; and if it did, it does not appear that any of the witnesses came within the class who may testify as experts.— 17 *Wend.* 137; 24 *Wend.* 672; 7 *Wend.* 78; 23 *Wend.* 426; 4 *Barb.* 261; *Ibid.* 256.

2. Witnesses can not testify as to the *amount* of damages sustained. It is their duty to give *facts,* and that of the jury to determine the amount. — 17 *Wend.* 136; 2 *Comst.* 514; 23 *Wend.* 434; 4 *Barb.* 261.

3. The defendant is only liable for the *proximate* damages arising from the breach of the contract; not for those which are remote or contingent. — 2 *Greenl. Ev.* § 256; 2 *Pars. on Cont.* 455, 459; 3 *Mich.* 62; 7 *Hill,* 67; *Sedgw. on Dam.* 63, *et seq.*

4. Anticipated profits are not recoverable. — 2 *Pars. on Cont.* 458; 4 *Barb.* 261; 7 *Hill,* 61; 21 *Wend.* 342; 20 *Eng. L. & Eq.* 410.

5. Defendant is not liable for any act of plaintiff, not connected with the contract, by which the plaintiff's loss was increased; nor for his insolvency resulting from a breach of the contract. — 4 *Denio,* 546; 2 *Pars. on Cont.* 454; 3 *Denio,* 406; *Sedgw. on Dam.* 69; 7 *Hill,* 69.

6. The testimony offered being inadmissible on the question of damages, and the court having ruled it out, there was nothing to submit to the jury except testimony which was entirely too vague and uncertain; and, the breach being proved, the charge of the court was unobjectionable; for, as matter of law, the plaintiff was entitled to nominal damages only.— *Sedgw. on Dam.* 53, *et seq.*; 1 *Taunt.* 121; 56 *Eng. L. & Eq.* 398.

EDWARDS v. SANBORN.

MANNING J.:

This is an action to recover damages for not shipping from Sandy Hill, in the state of New York, to the plaintiff at Ontonagon, a circular saw mill purchased of defendant, and agreed to be shipped by him on a certain day.

On the 31st of July, 1855, plaintiff contracted with defendant for a circular saw mill. The contract price was four hundred and thirty-five dollars, of which sum two hundred and thirty-three dollars were paid at the time, by a note at six months, payable, with use, at the Michigan Insurance Bank, and the balance was to be paid in cash on the 15th of August, when the mill was to be shipped. The declaration, after setting out the contract, alleges the balance of the purchase money was paid in cash on the 15th of August, and that defendant did not ship the saw mill on that day, nor until two months thereafter, and that by reason thereof it did not reach its place of destination during the season of navigation, and was detained until June of the following year; whereby the plaintiff sustained great damages in the hiring of laborers, who remained idle, in expenses, and money paid out in preparing his ground and buildings for immediate use of said circular saw mill in the sawing of lumber, and in stocks and provisions which became useless, and had been deprived of large gains and profits which he might and would have made in his said business of sawing lumber, for which the said circular saw mill was intended, and for which he, the said plaintiff, prepared at large expense, &c.; to his damage of three thousand dollars.

On the trial, plaintiff introduced depositions of some half dozen witnesses to prove the matters set out in the breach of his declaration. Certain parts of each one of these depositions were objected to, and by the rulings of the court were not permitted to go to the jury; and exceptions were taken by plaintiff. I do not deem it necessary, nor is it my intention, to notice these exceptions further than to remark,

that the object of plaintiff, it would seem, and the tendency of nearly if not all of the excluded testimony, was to prove the profits plaintiff might have made in the business of manufacturing lumber had the circular saw mill been shipped on the day mentioned in the contract, and arrived at Ontonagon in due course of navigation early in the fall. I have no hesitation in saying, in this view of the case, the judge was correct in ruling as he did — so far, at least, as the testimony offered related to profits.

If the object of plaintiff had been that, as he had shown every thing save the circular saw mill was in readiness to commence the manufacture of lumber, he was entitled to recover as damages what the use of the mill was worth in a complete state, for the time he was deprived of its use by reason of defendant's not performing his contract; and if the rejected testimony had tended to prove the value of such use, the question would have arisen whether that was the proper measure of damages in such a case; but as it is not before us, I do not wish to be understood as expressing an opinion one way or the other. By use of the mill I do not mean what might have been made in running it, for that is more properly profits, but what would have been a fair rent for it by one wanting it for the manufacture of lumber. The question, however, would not have arisen had the excluded testimony been received; 1st, Because it did not appear plaintiff had a boiler and engine on the mill premises, or at Ontonagon, for propelling the saw; and, 2d, Because none of the witnesses were examined as to the value of the use of the mill. I am therefore of opinion the testimony was properly rejected by the circuit court.

There was evidence before the jury of the price of the mill, and of its payment, and that it was not shipped by defendant at the time he agreed to ship it, nor until some time thereafter, and that it did not reach Ontonagon until some time in May, 1856, and that if it had been shipped at Sandy Hill on or about the 25th August, it would have reached Ontona-

gon in thirty days by the usual course of transportation. With this evidence before the jury, the judge charged them that plaintiff was entitled to nominal damages only, to which an exception was taken; and the question is now before us, whether the charge was correct under the circumstances. I think in such a case the plaintiff is entitled to damages equal to the interest on the four hundred and thirty - five dollars, the price paid defendant for the mill, for the time he was deprived of the possession of it in consequence of defendant's breach of the contract. It is the same as though he had retained the mill in his possession, against the will of the plaintiff, for the same length of time. Will the law permit the vendor of an article to retain both it and the money he has received for it, against the will of the vendee, without making the latter compensation equivalent to the use of the money he has given in exchange? Shall he be permitted to say to the vendee, "If you had had the article in your possession you would not have used it"; or that, "The use of it would not have been equivalent to the interest on the money you paid me for it, and therefore you have sustained no damages, or less damages than you demand." It is not for a wrong doer to put such a question to the injured party; and if put, the reply to it is, "If you had delivered me the article and I had retained the money, the law would give you the money with interest. The article I purchased of you, in my hands, is equal to the money I gave you in exchange; otherwise I should not have purchased it of you: why not then give me interest on its cost while you have wrongfully withheld it from me? Suppose it was Power's Greek Slave I had purchased of you at $10,000,— would the law require me to show the use I would have made of it, and the dollars and cents I had lost in being deprived of the possession of it? The law is guilty of no such absurdity."

I think the judgment below should be reversed, and a new trial granted.

EDWARDS *v.* SANBORN.

CHRISTIANCY J. :

I agree entirely with my brother Manning in the result at which he has arrived, and substantially in his reasoning, as applicable to the peculiar facts of the case.

Profits, as such, are generally excluded from the estimation of damages, not because they are profits, but because, in the great majority of cases, they depend too much upon contingencies to be estimated with reasonable certainty. And this would be emphatically true of the profits sought to be estimated by the loose *data* furnished by the evidence in this cause.

But in cases (and they are numerous) where profits are but another name for the ordinary use of a thing, or where they may be estimated with reasonable certainty by the test of experience, I think the loss of such profits as just a claim, and as certain a ground for the estimation of damages, as any other item or cause of loss or injury ; since, in such cases, they fall as clearly within the principle of compensation, and must have been as much within the reasonable contemplation of the parties, in making the contract, or in committing the act which has occasioned the damage.

Take, for example, the case of an ordinary grist mill for custom work, which has been for years in operation, the profits of which have been nearly uniform one year with another, at any particular season — say five dollars per day. An injury is done to the dam which requires ten days to repair, during which the mill is compelled to lie still. In such a case, there can be no better or more certain criterion of damages, than these profits, which, added to the cost. of repairing, would constitute the damages against the party causing the injury.

As to the propriety of allowing interest on the price of an article, in lieu of nominal damages, in a case like the present, and where the plaintiff fails to prove any other damages, I can entertain no doubt. The plaintiff had paid

the purchase price (the principle would be the same if he had given his note on interest). The defendant contracted to ship the mill by a certain day, and failed to do so until so late a period that it did not, and could not, arrive until many months after it would have arrived if shipped by that day. The plaintiff had a right to rely upon the contract, and during this whole period of delay, was entitled to the use, full property, and control of the mill. But the defendant, during this long period, wrongfully detains both the mill and the money which was paid for it, and prevents the plaintiff from any use, control, or disposition of it. I think these facts constitute, in law, conclusive evidence of a loss to the plaintiff equal to the interest of the money; or, in other words, that in the absence of any other evidence of damage, the law must infer damages equal to the interest. To refuse this would be to encourage the breach of such contracts, on the slightest grounds; as in many cases the actual damages for the breach, though very serious, hardly admit of adequate and certain proof. The interest of the money, though less, in most cases, than the actual damages, must, it seems to me, approach much nearer the standard of just compensation than the uniform nominal damages of six cents.

A party who, in violation of his contract, detains from another the use and dominion of an article for any period of time, has no right to say that the party whose rights he violates would not have used it if he had had it. This is a question with which *he* has no concern; its decision belongs exclusively to him who is entitled to the property, and who has a right to decide for himself, according to his own views of convenience or profit, how or when he will use it, or on what terms he will dispose of it. To permit such a defense would be to sanction a most unwarrantable interference with the exclusive rights of others in the management and disposition of their own property.

Take as strong a case as can be suggested for the defendant. A wrongfully detains from B a cider mill during

the spring months, or a sleigh during the summer. Can A be allowed to set up in bar of all but nominal damages, for this detention, that B could not have used the article if he had had it? B was entitled to control his own property in his own way, as much as if it had been money in his pocket; and though he could not make cider with his mill, or ride in his sleigh, during those particular months, he might have sold them and converted them into money, had he not been wrongfully deprived of the opportunity. No man is compelled to keep and use any article for any specific purpose. The right of sale is the most valuable incident of personal property, and every man is entitled to judge for himself, not only how he will use, but when and under what circumstances he will sell it; and he who deprives him of that right by wrongfully detaining it, can never be allowed to complain if he is compelled to pay damages equivalent to the interest of its value, since, if sold, its price would have earned that interest.

I think, therefore, in all such cases, a plaintiff should be allowed to elect to take the interest of the price of the article, or such other damages as he may be able to prove. But he should not be entitled to both.

CAMPBELL J.:

Being of opinion that there was no error in the court below, it is only necessary, in connection with the views expressed by my brethren, that I refer to the question whether the judge erred in not instructing the jury to allow interest in the absence of any special damages.

The damages in a case like this, as all agree, arise, not out of the depreciation in the value of the machinery as an article of merchandise, but in the loss of its possession as a thing of use.

In the absence of proof of the amount of damage, the law, upon proof of a breach of contract, does not defeat the right of action entirely, but infers some damage. Where money is

detained, it infers a precise amount, which is always the legal rate of interest. But where it draws such an absolute inference in the absence of proof, it will not allow the introduction of proof to enhance or diminish the rate. It fixes a rule for all cases. In the absence of a statutory rule, I am aware of no authority which, where there is no proof, will infer any amount of damages which is more than nominal.

The principle of allowing the recovery of damages for the breach of contracts, is universally based upon the rule of compensation. The law imposes no penalty, as such, but simply requires the defaulting party to make good such pecuniary loss as his neglect has entailed upon the other party. And this loss is to be ascertained according to established principles. The loss or gain of the defaulting party is not the test. He is bound to make good such injury as the complaining party can show that he has sustained, within the legal rules, and he is liable to nothing more. His own gains do not aggravate, neither do his own losses diminish, the losses of his adversary. There are peculiar cases, such as marriage promises, in which a wider range is allowed for proof of injury, but even there, compensation is the only thing aimed at. And in no case, so far as I can ascertain, in the absence of any statutory rule, has the law inferred any specific amount of damages beyond nominal damages.

If a party wishes to recover more than these, the amount of injury is as clearly a specific issue, as the breach of the contract. I do not perceive how the law can determine by inference that the use of a chattel is worth one sum or another, whether the rate inferred be minimum or maximum. As a matter of every day experience, we know that farming implements are of no use at certain times, and of use far beyond interest on their cost at others. The same difference exists in the use of other chattels. If a farmer has paid for his plow, and does not need the use of it, and no one else could use it either, it can make no difference to him that the money he has paid is worth seven or ten per cent. to the manufacturer.

6 MICH. — Y.

The only question he is concerned with is how much has he been damaged by not having his plow.

No rule which the law can adopt will give adequate relief in all cases; and I think the only safe rule is to leave the amount of damages on contracts, in all cases not regulated by law; to be settled upon proof. The rule of interest may be a convenient one, but it is no nearer the actual damage in each case than any other arbitrary basis of computation, while it, in my judgment, is more in the nature of a penalty than of remuneration.

I think the judgment should be affirmed.

MARTIN Ch. J. did not sit in this case.

*Judgment reversed.*