GEORGE M. DAYTON v. THE ESTATE OF JOHN B. DAKIN, DECEASED.

*Estates of deceased persons—Claims—Appeal—Amendment—Interest
—Mortgage foreclosure—Growing crops—Parol
contract—Evidence.*

1. On appeal from the disallowance by commissioners on claims of a claim against the estate of a deceased person, the claim

. as heard by the commissioners cannot be enlarged in the circuit court by amendment; citing *Patrick v. Howard*, 47 Mich. 40.

2. Where, in such a case, nothing appears · in the record tending to show that certain amendments enlarging the claim as heard by the commissioners were considered by the jury or cut any figure on the trial, the allowance of such amendments is error without prejudice.

3. A mortgagor filed a claim against the estate of the mortgagee for one-half of certain crops grown upon the mortgaged premises, and which the mortgagee, after bidding in the land on foreclosure, had sold to the tenant of the mortgagor. And it is held that the claimant is entitled to interest on his claim, if allowed, though not specifically mentioned in the claim, upon the principle that interest may be allowed on money illegally withheld, or property converted, without proof of special damages.

4. A claim for 900 bushels of corn, at 25 cents per bushel, being one-half of the corn grown on 47 acres, was filed against the estate of a deceased person. On appeal the claim was amended so as to call for 1,000 bushels of corn, at 35 cents per bushel, grown on several parcels, aggregating about 47 acres. And it is held that the original claim would have justified an allowance of one-half of the corn grown upon the 47 acres; that as this was all that was claimed on the trial of the appeal, as disclosed by the evidence and charge, it may be said that the identical claims were tried on both occasions, and that all that was tried upon the amended claim might have been allowed by the commissioners under the original claim.

5. A sale under a decree of foreclosure carries with it the unharvested crops on the mortgaged premises.

6. Annual crops may be sold and conveyed by parol contract.

7. The agreement of a mortgagor under which the mortgagee is allowed to enter upon the mortgaged premises prior to their sale under a foreclosure decree, and put in a crop of wheat, is a sufficient consideration for the promise of the mortgagee to allow the mortgagor to take his share of the growing crops, which had been put in by a tenant, and the subsequent purchase of the premises by the mortgagee at said sale will not affect the right of the mortgagor to his share of the crops.

8. It is competent in such a case, as showing the conversion by the mortgagee of the mortgagor's share of said crops, for the tenant to testify that he did work for the mortgagee in payment for such share.

9. On the trial of an appeal from the disallowance of a claim filed by a mortgagor against the estate of the mortgagee for the value of certain crops growing on the mortgaged premises at the time of their sale to the mortgagee on the foreclosure of the mortgage, and which he afterwards converted to his own use, the mortgagor claimed and sought to show that an agreement was made between him and the mortgagee, under which the mortgagee was allowed to take possession of the land, shortly prior to the sale, for the purpose of sowing wheat, in consideration of which the mortgagor was to be allowed to harvest his share of the growing crops, which had been put in on shares by a tenant. This agreement was attempted to be proved by showing negotiations by letter between counsel for the respective parties, during the lifetime of the mortgagee, and by the conduct of the parties. The letters tended to prove that negotiations relative to such an agreement were had; that at the time the mortgagor was informed of that fact; that later his counsel brought home to the mortgagee the claim that such a contract was made; and that the mortgagee communicated with his counsel, and asked for his version of a talk he had with the counsel for the mortgagor on the subject. This was followed by testimony tending to show that the mortgagee came upon the land 15 days prior to the sale, and arranged with the tenant to put in wheat, stating that he and the mortgagor had made arrangements about putting in the wheat crop on the farm; and that wheat was put in accordingly. And it is held that the letters related to pertinent facts, and would have been admissible had the mortgagee been defending in person; that they are consistent with and corroborative of such a contract (though they fall short of establishing it), and are therefore admissible; that, unless witnesses were present, the testimony of the tenant, that the mortgagee stated that he and the mortgagor had arranged about putting in the wheat, is the only kind of evidence admissible of such meeting and talk; that such testimony was clearly competent, and warranted an inference that the talk alluded to the matters referred to in the letters.

Error to Ingham. (Person, J.) Submitted on briefs October 12, 1894. Decided December 18, 1894.

Appeal from the disallowance of a claim against the estate of a deceased person by commissioners on claims. Defendant brings error from a judgment of allowance in

the circuit court.    Affirmed.    The facts are stated in the opinion.

*Smith, Lee & Day,* for appellant.

*M. V. Montgomery,* for claimant.

HOOKER, J.   In August, 1888, the claimant owned a farm, which he had previously bought subject to a mortgage held by one Dakin, since deceased, and which was in August, 1888, in process of foreclosure in chancery, the sale being advertised for September 15.    At this time, *i. e.,* August, 1888, the claimant owned an undivided half of the crops upon the premises;   the other half being owned by one Palmer, who put them in upon shares.    The land was bought by Dakin upon the sale, and he thereafter sold Dayton's share of the crop, including some corn which is claimed to have been cut and shocked before the sale. After Dakin's death the claimant filed a claim against the estate, which was disallowed; and an appeal was taken to the circuit court, where he recovered a verdict for $326.70, from which the administrators appealed.    The claim which appears to have been relied upon in the circuit court was that the portion of the crop that was severed before September 15 belonged to the claimant, and, further, that an agreement was made, under which Dakin was allowed to enter and take possession for certain purposes on September 1, in consideration of a promise to allow the claimant to take his share of the growing crops.

The first question to be noticed arises over an amendment to the claim permitted by the circuit judge.    The return of the commissioners showed the names of claimants, the amount claimed, and the amounts allowed. Opposite claimant's name, under the word " Claimed," was placed the sum of $432.56, followed in the column for "Amount Disallowed " by the same sum.    The printed

record (and presumably the original) contains an exemplification of the record of two claims, one of which is for $432.56, over the certificate of the probate court. They have no place in the record, unless they are parts of the proceeding, although there is nothing upon them to show that they were filed separately in the circuit court; but they appear under the same certificate of the probate judge, as a part of the exemplification, and we think that they should be so considered.

It is further contended that the amendment enlarged the claim as heard by the commissioners. If it did, the amendment is improper, under repeated decisions, of which the case of *Patrick v. Howard,* 47 Mich. 40, cited by counsel, only need be mentioned. We may profitably eliminate one of the claims mentioned, as the commissioners appear not to have passed upon it. The other was as follows:

"Estate of John B. Dakin, Deceased, in account with George M. Dayton, Dr.

| | | |
|---|---|---|
| To 900 bushels of corn, one-half grown on 47 acres, 25 cents per bushel | $225 | 00 |
| To 20 bushels potatoes at 35 cents per bushel | 7 | 00 |
| To 17¼ barrels of apples at $2 per barrel | 35 | 00 |
| To interest for three years | 48 | 06 |
| | $315 | 06 |
| To one-half of the corn fodder grown on the 47 acres above named, at $5 per acre, and interest at the legal rate upon the item of $117.50 for three years | $117 | 50 |
| | $432 | 56" |

The claim, as amended, was as follows:

"Now comes said claimant, and by leave of court, first obtained, amends his claim so that the same shall read as follows:

To 1,000 bushels of corn grown in several parcels, aggregating about 47 acres, in the year and cropping season of A. D. 1888, upon the

farm then occupied by one George Palmer, described as all of the south-west quarter of section No. 24, and the north-west quarter of the north-west quarter of section 25, except five acres off from the south-west corner, and also the north 46 acres of east half of south-west quarter of section 25, all in town 4 north, of range 2 east, Ingham county, Michigan, at 35 cts. per bushel... $350 00

To 20 bushels of potatoes grown on said farm during said season, at .35 per bushel............... 7 00

To 17½ barrels of apples grown on said farm during said season, at $2.00 per barrel............... 35 00

To one-half of the cornstalks and fodder from which said corn above mentioned was husked and gathered, at $5.00 per acre; that is, one-half of $235............................................. 117 50

Total principal................................ $509 50

To interest on said total at 7 per cent. per annum since September 15, 1888 (from September 16, 1888, to March 16, 1893)........................... 160 50

Total principal and interest.................... $670 00"

If these claims are to be measured by dollars and cents only, it must be conceded that the amendment enlarged the amount of the original claim. The 900 bushels of corn was increased to 1,000, and its value from $225 to $350. To this also was added the sum of $160.50 for interest from the date of the conversion. The claim was stated in various ways, in addition, viz.: A claim was made for the money received by Dakin upon a sale of claimant's half of the property, and for interest thereon. He charged for rental of the farm from September 1 to September 16 the crops alleged to have been promised to claimant, and interest. He made a claim for the rental value of the farm for a year, from September 1, 1888, to September 1, 1889, with interest. Our attention is not called to anything in the evidence or charge tending to show that the last three forms of stating claimant's demand were considered by the jury, or cut any figure upon the trial.

They may, therefore, be disregarded, as, at most, they were error without injury.

Turning our attention' to the first amended claim, we may pass the interest question with the remark that the claimant would have been entitled to interest upon his claim, if allowed, though it had not been specifically mentioned in the claim, upon the principle that interest may be allowed on money illegally withheld, or property converted, without proof of special damage. *Edwards v. Sanborn,* 6 Mich. 348; *McCreery v. Green,* 38 Id. 172; *Davis v. Strobridge,* 44 Id. 157; *McGuire v. Galligan,* 53 Id. 453; *Ripley v. Davis,* 15 Id. 75; *Northrup v. McGill,* 27 Id. 234, 238; *Burk v. Webb,* 32 Id. 173; *Winchester v. Craig,* 33 Id. 205; *Allen v. Kinyon,* 41 Id. 281; *Symes v. Oliver,* 13 Id. 9; *Chapman v. Dease,* 39 Id. 333. It is the common practice, in actions for breach of contract, to allow interest without a special averment. Whether it be said that Dakin was liable for an unlawful conversion or for breach of contract, the same is true.

This brings us to the corn. In the original claim the amount was mentioned at 900 bushels; in the amended account, at 1,000 bushels. In the former, however, it was alleged to be one-half of the product of 47 acres of land. Doubtless this would have justified an allowance of one-half of the corn grown upon the 47 acres, which is all that was claimed upon the trial, as the evidence and charge disclose. It can therefore be truly said that in this respect the identical claims were tried on both occasions, and that all that was tried upon the amended claim might have been allowed by the commissioners under the claim as first filed.

The next question of importance is the proof of the alleged contract. Dakin was dead, and the claimant under the statutory disability. Counsel attempted to prove the contract by showing negotiations between counsel for the

respective parties by letter, and possibly otherwise, and by the conduct of the parties. These letters were:

1. A letter dated August 30, 1888, from Mr. Smith to his client, Dakin, containing an offer of an arrangement such as is now claimed.

2. A letter of August 29, 1888, from Mr. Montgomery to his client, Dayton, stating that he had had an interview with Mr. Smith, and asking him to come in and talk it over.

3. A letter from Mr. Montgomery to Dakin, claiming Dayton's right to the crop under such arrangement.

4. A letter from Mr. Smith to Mr. Dakin upon the same subject, apparently in answer to a letter inclosing the letter from Mr. Montgomery to him, and asking information in regard to the facts.

This was followed by testimony tending to show that Mr. Dakin came upon the farm September 1, and arranged with the tenant to put in wheat, stating that he and Dayton had made arrangements about putting in the wheat crop on the farm, and that wheat was put in accordingly. Subsequently, on September 15, Mr. Dakin again came on the farm, and wanted to sell Dayton's share of the crops to the tenant, and finally did so.

Objection was made to the admission of these letters. They tended to prove that negotiations were had, of the character claimed, between counsel; that at the time Dayton was informed of that fact; that later Dayton's counsel brought home the claim that such contract was made to Mr. Dakin, who communicated with Mr. Smith about it, asking for his version of the talk with Mr. Montgomery. All of these were pertinent facts, and would have been admissible had Dakin been defending in person. They are by no means conclusive, however. They are consistent with and corroborative of such a contract, though they fall short of establishing it. They were therefore admissible.

It is said, however, that there was no further evidence to support the claim of a contract; that nothing shows

that Dayton and Dakin ever met, or agreed upon any-
thing. But this overlooks the statement made by Palmer,
that Dakin said that hè and Dayton had arranged about
putting in the wheat. Unless there were witnesses pres-
ent, that is the only kind of evidence admissible of such
meeting and talk, as Dakin was dead and Dayton could
not testify. It was clearly competent, and there is room
for an inference that the talk alluded to the matters re-
ferred to in the letters.

Defendant's next contention is that such agreement
would not have been effectual to prevent the crops passing
to Dakin upon his becoming the purchaser at the fore-
closure sale two weeks later. A number of cases are cited
in support of this claim. All of them support the propo-
sition that a sale under a decree of foreclosure carries un-
harvested crops, which is undisputable. But annual crops
may be sold and conveyed by parol contract. *Vanderkarr
v. Thompson*, 19 Mich. 86; *Tripp v. Hasceig*, 20 Id. 261;
*Crapo v. Seybold*, 35 Id. 169, 36 Id. 444; *Austin v. Sawyer*,
9 Cow. 39; 3 Pars. Cont. 31, and cases cited. Had Dakin
been the absolute owner of such crops at the time, he
could have sold them to Dayton, and yielding possession
to the premises, and permission to sow wheat, two weeks
before Dayton's exclusive right to the premises could be
divested, would have been sufficient consideration to sup-
port the sale. It was no less a consideration for an
executory agreement that Dayton should have and might
take off the crop, if indeed such agreement did not at
the time amount to a sale of his interest in the crop,
whatever it was. We think of no reason why Dakin
could not make an executory contract to sell these
crops, though he did not at the time have any title
to or interest in them; and we find nothing in the

cases cited to the contrary. If it should be admitted, in accordance with the case of *Ledyard v. Phillips*, 47 Mich. 305, that any other purchaser at the fore-closure sale would have taken the crop, and further that Dakin, in case of a purchase by him, would take the same, and did so, his executory contract, made upon a distinct consideration at a different time, would be bind-ing upon him. It cannot be said that he was paying for the property twice. Assuming that he bought and paid for it at the sale, and obtained the title to the crops thereby, the consideration for parting with them was already received.

Error is assigned upon the testimony of Palmer, show-ing that he did work for Dakin, and its value, as a con-sideration for Dayton's share of the crop. Had he said he bargained for these crops, and paid Dakin a given sum of money for them, it would have been proper, as showing the conversion. But, as he did not pay money, he stated what he did pay, which we think competent.

The other questions raised by the record present no legal questions of interest, and are therefore not discussed, further than to say that we find no error in them.

The judgment will be affirmed.

The other Justices concurred.