Martin vs. Estate of Martin.

MARTIN, Respondent, vs. ESTATE OF MARTIN, Appellant.

*November 16 — December 7, 1900.*

*Defective adoption of child: Compensation for services: Presumption: Rebuttal: Void contract to leave property at death: Limitation of actions: Pleading: Estates of decedents: Special verdict: Finding construed: Validity of contract.*

1. Where a boy was received into a family as a son, under defective adoption papers, and rendered services in that capacity, the presumption that such services were not to be paid for can only be rebutted by proof, either direct or circumstantial, which establishes an express contract to pay for them.
2. An oral contract in such case whereby, in consideration of his mother's consent to the adoption of the boy and of his services to be rendered as an adopted son, the person intending to adopt him agreed that she would give him all her property, real and personal, at her death, is void as to the real property under the statute of frauds and, being indivisible, is wholly void; but such a contract

nevertheless rebuts the presumption that the services of the boy were to be gratuitous.

3. When, in such case, the services of the boy had ceased and he had attained his majority, he could, if entitled to recover at all, have made his demand and brought action for the value of his services, the void contract being no defense and of no effect to extend the time of payment; and the statute of limitations began to run accordingly.

4. Under sec. 3841, Stats. 1898, the statute of limitations need not be pleaded as to a claim against the estate of a decedent.

5. In view of the language used in the questions submitted for the special verdict, of the instructions given to the jury, and of the evidence returned to this court on appeal, a finding of the jury that a person promised and agreed to devise real estate is *held* to be equivalent merely to a finding of an oral promise or understanding, and not of a valid (i. e. a written) agreement, although the verdict does not specifically state that it was oral, and although the bill of exceptions is not certified to contain all the evidence.

APPEAL from a judgment of the circuit court for Jackson county: JAMES O'NEILL, Circuit Judge. *Reversed.*

This is a claim against the estate of Catherine Martin for personal services. The claim was filed in the county court of the proper county, as follows:

Estate of Catherine Martin, Deceased.
To Frank Martin, Dr.  ·

| | |
|---|---:|
| To services from 1872 to 1885, inclusive, payable at death of Oliver Martin and Catherine Martin, 13 years | $2,300 |
| To cash given to Catherine Martin in 1891 | 100 |
| Total | $2,400 |

The claim was duly verified, and the administrator of the estate filed a general denial and pleaded the statute of limitations. After a trial the claim was disallowed in the county court, and the plaintiff appealed, and the action was tried before a jury in the circuit court. There were some facts which were undisputed, which may be stated as follows:

In 1873 Catherine Martin and Oliver Martin, her husband, occupied a farm in Jackson county, in this state, the title to which was in Catherine. In the last-named year, having no

children of their own, Catherine and Oliver took the plaintiff, who was then a boy eight years of age, to live with them upon the farm, under a promise made to the plaintiff's mother, who had been deserted by her husband, that they would adopt the plaintiff and make him heir of their property. No legal adoption was, however, made. The plaintiff thereafter lived with the Martins, doing such work as he was capable of, until some time between the years 1883 and 1886, being treated as a son and furnished clothes, board, and a limited amount of schooling. He assumed the name of Frank Martin, and supposed that he had been adopted as their son. He left the Martins not later than some time in the year 1886, and never returned to do any work for them thereafter. He reached the age of twenty-one years in the year 1886. Oliver Martin died in the year 1894, and Catherine in the year 1897, both intestate; and Catherine leaving as her estate the aforesaid farm, worth about $1,500, and a small amount of personal property, not exceeding $500.

The jury returned a special verdict as follows: "(1) Did the deceased, Catherine Martin, and her husband, Oliver Martin, and the mother of plaintiff, about the year 1873 execute certain papers, by which it was intended that said Catherine Martin and Oliver Martin should adopt plaintiff as their son and heir? Yes. (2) Did said Catherine Martin at the time of the making of such papers, and in consideration that the mother of plaintiff consented to such adoption and that said plaintiff should live with her and render services to her as such adopted son, promise and agree with plaintiff, acting by his mother, that at the death of said Catherine she would make plaintiff her sole heir at law, and give to him all her property, both real and personal, at her death? Yes. (3) Did said Catherine Martin afterwards, and during the time plaintiff lived with her, by her acts, statements, and conversations, lead plaintiff to believe that she would devise and bequeath to him at her death all her prop-

erty, in consideration of such adoption and services being rendered by plaintiff? Yes. (4) Did plaintiff perform labor and services, pursuant to such agreement and with the expectancy of so being compensated, for said Catherine Martin, from about the spring of 1873 until plaintiff left said Catherine? Yes. (5) What was the value of the labor and services so rendered to said Catherine Martin during the said period, over and above his care, clothing, board, education, and all other things of value received by plaintiff from said Catherine or her husband? $900. (6) Did said Catherine fail to perform her part of said alleged agreement, by failing to devise and bequeath her said property to plaintiff, and to compensate said plaintiff for such services? Yes. (7) Was said plaintiff in fact never adopted as the son and heir of said Catherine, by failure to complete the necessary proceedings according to law to make such proceedings effective? He was never adopted, the proceedings being ineffectual for that purpose. (8) Were these services of plaintiff performed for Catherine Martin, and upon the separate property and estate of said Catherine Martin, and in her separate business? Yes. (9) Did Catherine Martin, by the employment of plaintiff and by said agreement, intend to charge and bind her separate estate? Yes. (10) (At request of defendant's counsel.) Did Catherine Martin and her husband, Oliver Martin, act jointly in any and all agreements made or signed by them for the adoption of said Frank Martin? Yes."

The defendant moved to set aside the verdict, and also moved for judgment thereon for the defendant, which motions were overruled, and judgment entered in favor of the plaintiff upon the verdict for $900 damages and costs, from which judgment the estate appeals.

*G. M. Perry*, for the appellant.

For the respondent there was a brief by *Castle & Castle*, and oral argument by *B. J. Castle*. To the point that, had

the full record been before this court, the rule established by the following cases would apply and be decisive, they cited *Kofka v. Rosicky*, 41 Neb. 328; *Wright v. Wright*, 99 Mich. 170; *Quinn v. Quinn*, 5 S. Dak. 328; *Bell v. Rice*, 50 Neb. 547; *Ellis v. Cary*, 74 Wis. 176; *Estate of Kessler*, 87 Wis. 660; *Slater v. Estate of Cook*, 93 Wis. 104; *Carmichael v. Carmichael*, 72 Mich. 76; *Schwab v. Pierro*, 43 Minn. 520.

WINSLOW, J. The bill of exceptions is not certified to contain all the evidence; hence we are relieved from the consideration of the question whether the verdict, or any part of it, is supported by the evidence, and the only important question in the case is whether the verdict and admitted facts sustain the judgment.

The facts may be briefly summarized as follows: A boy eight years of age is taken by a woman into her family under incomplete or defective adoption papers, coupled with an oral agreement with the boy's parent to leave him her property, consisting principally of real estate, in consideration of the boy's services. No legal adoption takes place, but the boy stays and does the ordinary work of a boy on a farm, and is treated as a son, until he is somewhere from eighteen to twenty-one years of age, when he leaves and never returns to render services. Afterwards the woman dies intestate, leaving as her estate the real property before mentioned and a trifling amount of personal property. The claimant then files his bill for the reasonable value of his services, which ceased at least eleven years before the death of the woman. Can he recover?

Under well-settled rules of law adopted by this court, this question must be answered in the negative. Although not of kin to the intestate, the plaintiff was received into her family as a son, and the services rendered by him were rendered in that capacity; hence the presumption is that they were not to be paid for, and that presumption can only be

rebutted by proof, either direct or circumstantial, which establishes an express contract to pay for them. *Tyler v. Burrington*, 39 Wis. 376; *Wells v. Perkins*, 43 Wis. 160. The express contract which was shown was oral, and was in part a contract to devise real property, and hence within the statute of frauds (Stats. 1898, sec. 2304), and, being void as to the real estate, and indivisible, is void in whole. *Ellis v. Cary*, 74 Wis. 176; *Estate of Kessler*, 87 Wis. 660, and cases cited. This contract, though absolutely void, still has the effect of rebutting the presumption that the services were to be gratuitous (*Estate of Kessler, supra*), and so opening the way to a recovery of the reasonable value of the services (*Koch v. Williams*, 82 Wis. 186, and cases cited).

Manifestly, however, the void contract did not extend the time of payment for the services, and the plaintiff, if entitled to recover at all, could have made his demand and brought his action in 1886, when his services had wholly ceased and he had attained his majority. The supposed contract would have been no defense to the action, because the statute in this state makes it void. *Thomas v. Sowards*, 25 Wis. 631. Not having brought his action, it was barred by the six-year statute of limitation (Stats. 1898, sec. 4222) before the death of the intestate in 1897.

A claim is made that the statute of limitations was not properly pleaded, but, as this is a claim against an estate, it was not necessary to plead it. The statute forbids the allowance of a claim which is shown to be barred by the statute of limitations. Sec. 3841.

We are aware that there are authorities in other states holding that an oral contract similar to the one before us is not void, but may be specifically enforced on the ground of partial performance. *Wright v. Wright*, 99 Mich. 170, and cases cited. It is enough to say, however, that this court has not adopted that rule.

We have discussed the case upon the basis that it is estab-

Martin vs. Estate of Martin.

lished that the agreement to devise property to the plaintiff was an oral one, but we have not overlooked the fact that the verdict does not in specific language declare it to have been oral. The second question of the verdict asks the jury whether Catherine Martin at the time of the making of the adoption papers *promised* and *agreed* that she would give the plaintiff all her property, real and personal, at her death, and to this question the jury have given an affirmative answer. Now, it may be argued that this finding is a finding of a valid (i. e. a written) promise or agreement, and that in the absence of a complete bill of exceptions it must be conclusively presumed that there was evidence to support the finding; hence that it must be deemed a fact in the case that the agreement was in writing and valid. Whether this contention could avail the plaintiff anything in an action brought to recover the value of his services, in which he must repudiate the contract in order to recover, would seem to be a serious question; but, however that may be, we think that the only fair and reasonable construction of the finding is that the promise was oral. It will be noticed that the first question and answer find specifically that the parties *executed* certain supposed adoption papers, and that the second question omits all reference to the execution of any papers, but simply asks the jury whether Catherine Martin did " promise and agree " to give the plaintiff her property at the time of the making of the adoption papers. The careful reference to the *execution of papers* in the first question, and the equally careful omission of all such reference in the second question, clearly indicate to any mind that the second question refers to an entirely different kind of an agreement or promise, and one not evidenced by the execution of any papers; and we cannot escape the conclusion that a jury would at once answer the second question in the affirmative if they were satisfied of the making of an oral promise.

When, moreover, the charge which was given to the jury in connection with the second question is considered, there can be no doubt, we think, that the affirmative answer to the question must be construed as simply the finding of an oral promise. This charge was as follows: " This question you will answer, also, from the consideration of all the evidence: *Was it the understanding with the plaintiff's mother and the Martins that the latter should adopt the plaintiff and make him their heir?* And did the plaintiff's mother consent to the proposed adoption on such conditions? This is a question of fact, and you will answer it in such a way as the evidence will warrant." Here the jury are plainly told that the question is whether there was an *understanding* between Mrs. Martin and the plaintiff's mother. If the jury paid heed to this instruction,— and we must assume that they did,— then their affirmative answer to the question is equivalent merely to a finding that there was an oral " understanding" between the parties. As matter of fact, all the evidence returned which bears on the subject shows that the agreement was by parol; but this is not, of course, conclusive, in the absence of a certificate showing that all the evidence is returned.

*By the Court.*— Judgment reversed, and action remanded with directions to enter judgment dismissing the claim.