TAYLOR, Respondent, vs. THIEMAN, Administrator, Appellant.

*February 20—May 21, 1907.*

*Estates of decedents: Amendment of claim on appeal: Services rendered by one in position of son: Presumption: Express and implied promises to pay therefor: Evidence: Limitation of actions: Absence from state.*

1. On appeal from disallowance of a claim presented to the county court the circuit court may permit an amendment within the scope of such claim, but not .an ‘amendment adding an entirely · new item or claim.

2. Upon the evidence in this case—showing, among other things, that the claimant, though not formally adopted by the decedent, was treated as a son during both his dependent childhood and his adult years, and that he treated the decedent as his father—'there is *held* to be a presumption that services rendered by claimant to the decedent during the latter's old age were rendered gratuitously.

3. In such a case there can be no recovery unless an express promise by the decedent to pay for the services is shown either by direct and positive evidence or by evidence of circumstances which in their nature. are equivalent to direct and positive proof.

4. An express promise to pay for the services in such a case removes the presumption that they were gratuitous, even though such promise cannot be enforced—as where an express promise to devise land is void under the statute of frauds because not in writing; and under such circumstances a contract to pay the reasonable value of the services may be implied and recovered ‘upon.

5. Declarations of a decedent in his lifetime that he was going to give his house to his son J. for the help which J. had always given him, that he was reserving it for J., ·that it would be J.'s some day, and that he would make it all right with J. some day, are *held* sufficient, in connection with other circumstances, to make it a question for the jury whether an express promise to pay for J.'s services in some way was made by the decedent.

6. The cause of action upon an implied contract to pay for services, arising because of the invalidity of an express promise to devise land, accrues when the services are rendered;. and if they ‘were rendered more than six years before the death of the decedent recovery thereon is barred unless the operation of the statute of limitations was in some way suspended.

7. The fact that a person departed from the state and remained absent a large part of the time after a cause of action accrued against him does not show that he *resided* out of the state within the meaning of sec. 4231, Stats. (1898), so that the running of the statute of limitations would be suspended during the time of his absence.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

This is a claim against the estate of Albert Taylor, deceased. It was wholly disallowed in the county court, and the claimant appealed. After trial in the circuit court he secured a verdict for $1,260.24, upon which judgment was entered, and the administrator appeals.

It appeared upon the trial that the deceased, Albert Taylor, in 1855 was a farmer living with his wife upon a farm which he owned in the town of Greenfield, Milwaukee county, and that in June, 1855, the claimant, being then an orphan five years of age not related to the deceased, went to live with the deceased as a member of his family upon the farm; that the deceased had no children of his own, and that the claimant was taken into the family and treated as a son, though not formally adopted, and recognized as an adopted son and as a member of the family by the deceased and his relatives; that in June, 1870, the claimant enlisted in the regular army, and remained in the army until June, 1875, when his term of enlistment expired and he returned to the home of the deceased and worked on the farm until February, 1876, when the deceased sold his farm, and the claimant rented a farm a mile distant and commenced business for himself; that from February, 1876, until some time in 1884 the deceased lived during the greater part of the time in Indiana, but in the last-named year returned to Wisconsin and took up his residence in the town of Wauwatosa, in his own house, and lived there until some time in October, 1896; that the wife of the deceased died in September, 1891; that in October, 1896, the deceased went to Crown Point, Indiana, where he had some relatives, returning occasionally to Wauwatosa until he died,

April 16, 1902, leaving a will executed September 22, 1896, by which he left all his property to Cassius M. Taylor, a relative residing in Lake county, Indiana, which will has been duly probated in the county court of Milwaukee county; that the claimant was married in April, 1881, and has a son and daughter both of adult years.

The testimony further tended to show that in April, 1893, the claimant was living with his family in the city of Milwaukee, and that at this time the deceased, being alone in his house in Wauwatosa, requested the claimant and his family to come and live with him in Wauwatosa and that the claimant complied with the request; that from this time until the middle of September, 1895, the parties lived together in the house of the deceased, the claimant furnishing the meals and his family doing the washing and other work, including care of the deceased when sick; that the claimant then moved to another house near by, but the deceased continued to room in his own house and took his meals with the claimant, and the claimant's wife and family continued to do the washing and to furnish him care when sick till he went to Indiana in October, 1896.

The claim as originally filed in county court was for the sum of $2,761.83, and contained a number of items for money advanced and farm labor performed between April, 1868, and November, 1887. As to the money items no testimony was given in the circuit court, and the court directed the jury that they should only consider the evidence bearing on the claim for board, nursing, and care from 1893 to 1896. The only items during this period in the original claim were as follows:

| | |
|---|---:|
| To board and lodging from April, 1893, to September 1, 1895, 126 weeks at $4 per week.............................. | $504 00 |
| To interest on same from September, 1895, to April, 1902, at 6 per cent........................................ | 166 32 |
| To board from September 1, 1895, to September 25, 1896, 56 weeks at $2 per week................................. | 112 00 |
| To interest on same from September, 1896, to April, 1902, at 6 per cent........................................ | 36 76 |

At the opening of the trial in the circuit court, against objection and exception, the court allowed the claimant to file an amended claim, adding a number of items to the original claim aggregating $500, of which, however, the only items submitted to the jury were the following:

| | | |
|---|---:|---:|
| To washing, sewing, mending, from April 1, 1893, to October 1, 1895, 78 weeks at $0.75 per week....................... | $58 | 50 |
| To interest on same, 6½ years at 6 per cent................ | 22 | 82 |
| To cooking, washing, mending, and cleaning from October 1, 1895, to September 26, 1896, 52 weeks at $1.50 per week.... | 78 | 00 |
| To interest on same, 5½ years at 6 per cent................ | 25 | 74 |

Thus it appears that the aggregate amount of the items submitted to the jury was $1,004.14, while the verdict of the jury was for $1,260.24.

After verdict the court, against objection and exception, allowed a further amended claim to be filed to conform with the verdict and evidence, in which the item for board, lodging, etc., from April, 1893, to September, 1895, was increased to $7 per week instead of $4, and a like increase made in the item of board, etc., from September 20, 1895, to October 10, 1896, so as to make the aggregate of these two items $1,267.

For the appellant there was a brief by *Joseph G. Donnelly* and *John F. Thieman,* and oral argument by *Mr. Thieman.*

*W. A. Hayes,* for the respondent.

The following opinion was filed March 19, 1907:

WINSLOW, J. As appears by the statement of facts, the circuit court allowed an amendment to the original claim as filed in the county court which added two entirely new items, aggregating $185.06, and submitted them to the jury. This was clearly erroneous. This court has held that matters not presented in the county court cannot be brought into the controversy upon appeal, because the theory of the statute is that only claims which have been passed upon by the probate court are to be considered upon the appeal. *Sloan v. Duffy,* 117 Wis. 480, 94 N. W. 342. The circuit court has undoubtedly power to allow amendments in its discretion to such

claims, but the amendment must be within the scope of the claim presented to the county court. It cannot present an entirely new item or claim. Where the original claim is for the value of definite property or services, an ·amendment increasing the amount of such value is permissible, because such an amendment cannot be considered as adding a new or independent claim, but as merely making change in the scope of the claim upon which the county court passed. *Dayton v. Estate ·of Dakin,* 103 Mich. 65, 61 N. W. 349. See, also, *Longwell v. Mierow,* 130 Wis. 208, 109 N. W. 943.

The appellant moved for a nonsuit and also for a directed verdict on the ground that no express contract to pay for the alleged services had been shown, and as the rulings on these motions present the same general· question they will be considered together. In such consideration it becomes necessary to make some further statement of the evidence.

The evidence showing that the claimant was received into the family of the deceased and was called a son and treated in all respects as a son from his fifth to his twentieth year as well as during a number of months after his return from the army in his twenty-fifth year has already been quite fully stated. At this latter time the deceased sold his farm and the claimant started out to make his own way. No change appears to have taken place in the feelings of the parties toward each other at this time. The deceased still continued to speak of the claimant as his son and his boy, and the claimant apparently lost none of his filial regard, and his children seem to have considered and treated the deceased as their grandfather. In April, 1893, the deceased requested the claimant and his family to come and live with him in his house in Wauwatosa, and the claimant did so, and from that time until September, 1895, they all lived together as one family. The testimony seems to show that during this time the claimant furnished the food and such care as the deceased needed, while the deceased furnished the house without

charge for rent. In September, 1895, the claimant moved to another house near by, but still continued to furnish meals and care to the deceased, who continued to room in his own house until October, 1896. There is no direct evidence of any contract by the deceased to pay for the board and services so rendered, but there was considerable evidence by the claimant's children, as well as by disinterested witnesses, that the deceased said at numerous times that he was reserving the house for his son *John* (the claimant) or that he was going to give the house in which he lived to his son *John* for the help which *John* had always given him. It will be readily seen that the question whether the relations between the deceased and the claimant during the time they lived together were those of parent and child or of strangers to each other becomes a very important one. The circuit judge recognized its importance and charged the jury in substance that if they found the relations to be those of parent and child they must also find an express contract to pay for the services in order to find a verdict for the claimant, but if such were not the relations the claimant might recover upon implied contract.

The general questions involved have been frequently considered by this court and the following propositions have been very definitely settled: Where a child lives in his parent's household, even after his majority, eating at his parent's table and rendering services such as are ordinarily rendered by the members of a household to each other, the presumption is that the board and services mutually rendered are intended to be gratuitous, and no contract to pay therefor on either side will be implied; but there must be an express contract shown either by direct and positive evidence, or by circumstantial evidence equivalent to direct and positive. *Pellage v. Pellage,* 32 Wis. 136. The same rule applies between brother and sister (*Hall v. Finch,* 29 Wis. 278), stepfather and stepson (*Wells v. Perkins,* 43 Wis. 160; *Ellis v. Cary,* 74 Wis. 176, 42 N. W. 252), foster parent and child (*Tyler*

*v. Burrington,* 39 Wis. 376; *Martin v. Estate of Martin,* 108 Wis. 284, 84 N. W. 439), uncle and niece (*Leitgabel v. Belt,* 108 Wis. 107, 83 N. W. 1111); and it has been recently said that in all cases "where there is close relationship between the parties, and they live under the same roof, the rule is almost universal that services rendered by one to the other are presumed to be simply natural acts of kindness, and intended as a gratuity" (*Williams v. Williams,* 114 Wis. 79, 89 N. W. 835). In the last-named case it was further said that "there doubtless are cases where, though the parties do not live in the same household, still, from the closeness of the relationship and the fact of dependence of the one upon the other, as of an aged parent upon a son, or a feeble sister upon a brother, the same presumption may arise."

The facts as to the relations of the parties in the present case were all undisputed. The deceased always regarded the claimant as a son, and treated him as such both during the latter's childhood and during his adult years, and the claimant responded by treating the deceased as a father. In the claimant's youth he was dependent upon the deceased, and in the old age of the father- he was in turn dependent upon the claimant. We think that upon the undisputed facts the presumption arose that the claimant's services for his father from 1893 until October, 1896, were gratuitous, and that the jury should have been so instructed. This conclusion does not necessarily mean, however, that a nonsuit should have been ordered or a verdict for the defendant directed. It simply means that the jury should have been told that no recovery could be had unless an express promise by the deceased to pay for the services had been first proven, either by direct and positive evidence, or by evidence of circumstances which in their nature are equivalent to direct and positive proof. The principle is that, if such express promise be proven, it removes the presumption that the services were gratuitously rendered; if the express promise be to pay money or will per-

sonal property, it may be enforced according to its terms; if it be in whole or in part a promise to will real estate, it cannot be enforced because of the statute requiring such contracts to be in writing, sec. 2304, Stats. (1898), but it still removes the presumption and leaves the ground clear for a recovery of the reasonable value. A recovery under this latter principle is logically and truly a recovery upon implied contract, but it is differentiated from an ordinary recovery upon implied contract by the fact that it only becomes possible by virtue of the previous establishment of the express promise, while in controversies between strangers no such previous express promise need be shown. *Ellis v. Cary,* 74 Wis. 176, 42 N. W. 252; *Estate of Kessler,* 87 Wis. 660, 59 N. W. 129; *Leitgabel v. Belt,* 108 Wis. 107, 83 N. W. 1111; *Martin v. Estate of Martin,* 108 Wis. 284, 84 N. W. 439; *Loper v. Estate of Sheldon,* 120 Wis. 26, 97 N. W. 524. The broad statement sometimes made, that in such cases as the present there can be no recovery upon implied contract, is therefore inaccurate, if not positively incorrect. Correctly speaking, the principle is that there can be no contract implied merely from the fact of the rendition of the services; but where they are rendered under an express promise to devise land in return, a contract to pay the reasonable value may be implied and recovered upon, provided such express promise is satisfactorily proven. As it has been before stated, there were a number of declarations proven to have been made by the deceased in his lifetime to the effect that he was going to give the property to his son *John,* that he was reserving it for *John,* that it would be *John's* some day, and other statements that he would make it all right with *John* some day. These, we think, were sufficient to go to the jury in connection with the other circumstances in the case upon the question whether an express promise to pay for the services in some way was made by the deceased.

Another question becomes important at this point, namely,

the effect of the statute of limitations. It has been twice held by this court that in case of recovery upon implied contract, arising because of the invalidity of an express promise to will real estate, the cause of action accrues when the services are rendered as in other cases of implied contract, so that if the services were rendered more than six years before the death of the deceased the statute of limitations will run against them and bar a recovery, unless the operation of the statute be in some way suspended. *Martin v. Estate of Martin, supra; Loper v. Estate of Sheldon, supra.* The decision in the *Kessler Case,* which might at first glance seem to be to the contrary, is not really so, because in that case the services were continued up to the time of the death of the promisor. In the present case it appears that the services entirely ceased in the month of October, 1896, and that the deceased died April 16, 1902. It therefore appears that there could be no recovery upon implied contract for the services and board rendered prior to April 16, 1896, because they were rendered more than six years before the death of the testator, unless it further appeared that the running of the statute was suspended. There was proof that the deceased left Wisconsin and went to Indiana October 10, 1896, and thereafter spent most of his time in Indiana, returning to Wisconsin occasionally until his death in April, 1902. This constitutes the entire proof upon the subject, unless the facts that he retained his ownership of his homestead and that his estate is being probated in Milwaukee county be considered as bearing on the subject. This proof seems to have been considered as establishing the fact that he ceased to reside in this state, and hence that the operation of the statute of limitations was suspended. The statute, sec. 4231, Stats. (1898), provides that if, after a cause of action has accrued against any person, "he shall depart from and reside out of this state," the time of his absence shall not be deemed as a part of the time limited for the commencement of the action. Departing from the state and remaining

absent a large portion of the time do not necessarily prove that the party so departing has changed his residence. The proof was not sufficient to show that the deceased departed from *and resided out of* the state; and, in the absence of an express contract to pay for the services in money at the death of the testator, all claims up to April 16, 1896, seem to be barred by the statute of limitations.

Exception was taken by the defense to that part of the charge of the trial court on the subject of the burden of proof and the preponderance of evidence. As this alleged error was not assigned in appellant's brief we do not consider it, but we do not deem it improper to call attention to the fact that it seems to be practically identical in language and meaning with the instruction disapproved by this court in the case of *Anderson v. Chicago B. Co.* 127 Wis. 273, 106 N. W. 1077. A number of exceptions to the admission of evidence were argued, but we have found no error in them, and do not regard them as of importance enough to discuss in detail.

*By the Court.*—Judgment reversed, and action remanded for a new trial.

A motion for a rehearing was denied May 21, 1907.