## BEALL v. HOLLINGER.

(Court of Appeals of District of Columbia. Submitted February 5, 1926. Decided April 5, 1926.)

No. 4318.

1. **Executors and administrators ⟐⟹221(3)—In action against administrator for services rendered decedent, decedent's declarations and memorandum, according to which decedent's will was to have been drawn, showing intent to include plaintiff as beneficiary, held properly admitted, as tending to establish contract to pay for such services.**

In action against administrator for services rendered decedent, decedent's declarations that she intended to compensate plaintiff, and a memorandum, according to which decedent, two days before her death, directed that her will be drawn, and which indicated intent to include plaintiff as beneficiary, held properly admitted, as tending to establish contract to pay for services rendered by plaintiff.

2. **Trial ⟐⟹243—Instruction submitting issue whether services were rendered decedent, and, if so, whether rendered with understanding that they would be paid for, or under express agreement, held not inconsistent.**

In action against administrator for services rendered decedent, instruction submitting issue whether services, if rendered, were rendered with the understanding that they should be paid for, and continuing, "Now, this gentleman made no express agreement, and, if you find they were rendered with such understanding, and there was no express agreement," recov-

12 F.(2d)—10

ery should be for such amount as was not barred by limitations, *held* not inconsistent as conceding that there was no express agreement, and then submitting issue whether there was; the word "gentleman" being obviously intended to be plural and referable to jury.

Appeal to the Supreme Court of the District of Columbia.

Action by A. Clifford Hollinger against Fred Beall, administrator of the estate of Virginia Beckerdite, deceased. Judgment for plaintiff, and defendant appeal. Affirmed.

H. E. Davis, of Washington, D. C., for appellant.

Leon Pretzfelder and R. J. Quigley, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. This is an appeal from a judgment in the Supreme Court of the District in favor of the plaintiff, appellee here, against the defendant, appellant here, as administrator of the estate of Virginia Beckerdite, for services rendered the decedent from February of 1913 to the date of her death in February of 1923.

The declaration is in two counts, the first alleging that intestate, being unmarried and living alone, in poor health and unaccustomed to business affairs, undertook and promised the plaintiff that, if he would attend to and wait upon her during her illness and take charge of all her business matters as long as she lived, she would provide fair and reasonable compensation for the value of his services; that plaintiff, having agreed to and accepted the promises of the decedent, entered upon the services aforesaid and did everything in compliance with his part of the agreement; that the intestate accepted all of his services in accordance with her part of the agreement, although she did not make provision for the value of his services or any part thereof; and that the fair and reasonable value of such services was $3,000. The second count is on the common counts.

The bill of particulars annexed to each count is as follows: "To services rendered by A. Clifford Hollinger to Virginia Beckerdite, deceased, from February 1, 1913, to February 7, 1923, a period of ten years, at three hundred ($300) dollars per year, $3,000.00." Defendant pleaded the general issue and the statute of limitations. Plaintiff joined issue on the pleas of the general issue and the statute of limitations, and aver-

red that the cause of action did not accrue until February 7, 1923. Verdict and judgment for the plaintiff for $3,000.

The evidence for the plaintiff, from witnesses whose testimony showed great familiarity with the situation, was to the effect that the plaintiff had fully performed the services mentioned in the declaration, one witness saying: "I know he performed a great many services for her; at one time she had a very sore hand, and could not use it at all, and Mr. Hollinger was there constantly very early in the morning until late at night; he waited on her; he dressed her hand; he did all her errands for her—brought in coal. She was sick about several months. Other than this time, when she was ill, during her last illness he performed a great many services; he did all the banking for her. I am telling what the dead told me. * * * I had a good many conversations during her lifetime with Miss Beckerdite in relation to Mr. Hollinger. She often said that she did not know what she would do without Mr. Hollinger, and that before she died she expected to remember him in her will; that she intended to leave him and pay him well for all he had done for her. * * * The statement that she made in regard to her intention to compensate him she made several times. The last time she made it was about two weeks before she died."

Another witness, who had known Miss Beckerdite about ten years prior to her death, testified: "I saw Mr. Hollinger there quite often; she used to send me around to his house after him; she told me that she wanted him to write her letters sometimes, and sometimes she wanted to send him to the bank to get some money, and sometimes she wanted him to go somewhere, and sometimes she wanted him to go to market. He used to bring in coal sometimes, did anything she wanted done while I was there and he was there; she asked him to do it and he was always ready to do it; she talked to me about Mr. Hollinger, said that she did not know what she would do without Cliff (plaintiff); she said that she expected to get some money, and if she ever got it Cliff would be well paid; she said it more than on a dozen occasions when she sent me out. Miss Beckerdite told me that she got some money, and if she was ever able to make a will she would be sure to remember Cliff well; those were her words to me when she was sick. * * * It was a few days before she died that she told me that; she told me more than twice; she told me every

time I was with her when we talked about it; she told me that she intended to make a will, if she was ever able to."

[1] There was other evidence to the same effect. The physician, Dr. J. Rozier Biggs, who attended decedent in her last illness, testifying for the plaintiff, produced a memorandum reading as follows: "Pole, $5.00; Elizabeth Gibson, $5.00; Mrs. Bertha Nash, Mrs. Crocket Miller, A. C. Hollinger, all personal effects, jewelry and money in bank, invested and otherwise. Also loan to Bradley, $497. Have no collateral."

This witness then stated that Mr. Hollinger gave him the paper on the evening of either the 4th or 5th of February, 1923; that witness took the memorandum, but said nothing to the patient about it that evening; that the next morning he showed Miss Beckerdite the paper, and talked with her in reference to it, "read to her what was on it, and asked what she wanted me to do with it. She said 'I want you to make out my will as indicated there, with the exception that I do not want Mrs. Miller to have anything, because I think she has enough money, and I wanted to put you in my will, but I think you have enough, and I want the amount left as indicated, except as changed.'" The doctor declined to draw a will, and advised Miss Beckerdite to call in an attorney; but she said, "I feel very tired and it probably can rest a little while." She died two days later.

When this memorandum was offered in evidence, defendant objected, through his counsel, "upon the ground that the paper, having reference to an anticipatory testamentary disposition of the decedent's property, has no probative force as tending to show an obligation in lifetime in respect to anything pertaining to any of the objects of her bounty in anticipation of her death." This objection was overruled, and the exception noted forms the basis for the first two assignments of error here.

Tuohy v. Trail, 19 App. D. C. 79, was a suit by a daughter against the administrator of her father's estate for services rendered the parent. Proof of a contract to pay consisted of declarations of the decedent "that he intended to provide for his daughter after his death, and give her the greater part of his property." The court referred to the declarations as "of a casual character," and quoted from Professor Schouler's work on Domestic Relations, § 269, in which the author states that, where the relationship of parent and child exists, the law will not readily assume that of debtor and creditor like-

wise, but that this presumption may be overthrown, "and the reverse established by proof of an express or implied contract to that effect; an implied contract being proven by facts and circumstances which show that both parties, at the time the services were performed, contemplated or intended pecuniary recompense." The court continued: "This, we think, is a fair statement of the law upon the subject, and embodies the principles that must govern the case. There is no question of the meritorious services rendered by the plaintiff; and we think the proof, furnished principally by the repeated but varied declarations of the deceased, of his purpose and intention to provide for his daughter, and to save her from want, and his great desire to keep her with him, was of a character that made it proper to be submitted to the jury for their consideration."

In the case of Estate of Oldfield, 156 N. W. 977, 175 Iowa, 118, L. R. A. 1916D, 1260, Ann. Cas. 1917D, 1067, the court ruled that an agreement such as here involved might be proven by facts and circumstances as well as by direct evidence. "The mouths of both parties to this controversy," said the court, "were closed; one by death, and one by operation of law. That there was, or was not, such an agreement as she alleged, was a substantive fact, to be proven, as the court says, by direct evidence, or by facts and circumstances appearing in evidence—not necessarily by direct evidence." See, also, Taylor v. Thieman, 111 N. W. 229, 132 Wis. 38, 122 Am. St. Rep. 943, and Snyder v. Guthrie, 187 N. W. 953, 193 Iowa, 624, 24 A. L. R. 950.

The decision in Tuohy v. Trail governs this case. Indeed, the evidence here is stronger for the plaintiff than in that case, and this plaintiff is not burdened with a presumption that his services were performed gratuitously. The statements alleged to have been made by the decedent, to the effect that she expected to compensate the plaintiff by a provision in her will, were admissible as tending to establish a contract to pay for the services rendered; and the memorandum read to her by the doctor, and which she adopted, except as noted, amounted to nothing more than such a declaration. The court was careful to instruct the jury that this memorandum, in itself, did not establish an obligation on the part of the decedent, but that it might be considered "as evidence in connection with the other evidence in the case."

[2] The next assignment of error relates to the supposed inconsistency in the charge of the court based upon the following:

"Now, in this case, you may—if you find that the services were rendered, then you will go into the question as to whether, in view of what I have said, that they were rendered with the understanding that they should be paid for.

"Now, this gentleman made no express agreement; and, if you find they were rendered with such understanding, and there was no express agreement, then your verdict should be for the plaintiff, and you should find for the plaintiff the reasonable value of the services rendered since December 4, 1920, for the reason, under the law, that a claim for services rendered more than three years before the suit is brought is barred by the statute of limitations, as it is called.

"But, on the other hand, if you find from the proof that there was an express agreement, at the time the services were rendered, or prior thereto, by Miss Beckerdite to pay for them, that that agreement was to pay for them, simply, then the statute of limitations would likewise run. If the agreement was to pay for them by providing for them in her will, or, if the agreement was in the alternative, that she would either pay for them later or in her will, then the statute of limitations would not run, and the plaintiff would be entitled to recover for his services for the whole time."

Counsel for appellant contends in his brief that the court, having conceded that plaintiff had no express agreement with decedent, "with manifest inconsistency left it to the jury to find from the evidence in the case whether there was an express agreement by intestate to pay for plaintiff's services." We find no such inconsistency. The court instructed the jury that, if they found the services were rendered, it then would be their duty to determine whether "they were rendered with the understanding that they would be paid for." The obvious meaning of the paragraph following this was that such understanding "made no express agreement." It is clear that the court was referring to the jury, and not to the plaintiff, when using the word "gentleman," which was intended to be, and should have been, in the plural. The context clearly discloses this. Moreover, in the court's short charge, the plaintiff is referred to as "plaintiff" ten times. Having told the jury that an understanding made no express agreement, the court instructed them that, if they found the services were rendered "with such

understanding, and there was no express agreement," their verdict should be for the plaintiff for the reasonable value of his services since December 4, 1920. "But, on the other hand," said the court, "if you find from the proof that there was an express agreement," and the agreement was to pay by provision in the decedent's will, the statute of limitations would not run.

It is unnecessary to consider defendant's exceptions based upon prayers refused, since the charge of the court contained a correct statement of the law applicable to the case.

The judgment is affirmed, with costs.

Affirmed.