Estate of Clark: Tobler, Claimant, Appellant, vs. Graves, Administrator, Respondent.

*April 27—June 2, 1936.*

For the appellant the cause was submitted on the briefs of *J. G. McWilliams* of Janesville and *Elmer & Peterson* of Monroe.

For the respondent there was a brief by *J. M. Fitzgibbons* of Monroe, attorney, and *Jeffris, Mouat, Oestreich, Wood & Cunningham* of Janesville of counsel, and oral argument by *Otto A. Oestreich.*

NELSON, J. The question for decision is whether the findings of the trial court are against the great weight and clear preponderance of the evidence. The findings that there was no agreement or understanding between claimant and the deceased that the deceased would pay and claimant receive compensation for board, room, and other services; that such board and services were not furnished or rendered to deceased by claimant in pursuance of any agreement whereby claimant was to be compensated therefor; and that the understanding of both deceased and claimant was that all of such services were gratuitous, are particularly assailed.

The claimant was allowed to testify to all statements or declarations made by the deceased to her without objection as to their competency. She was therefore not restricted in the making of her proofs. While there is evidence in the record which, if deemed credible by the trial court, would tend to support a finding that an agreement was entered into by the claimant and the deceased, under which she was to be compensated for board, room, and services furnished and

rendered, it cannot be said that a contrary finding is against the great weight and clear preponderance of the evidence. The trial court, apparently, did not consider the testimony of the claimant as to the declarations of the deceased credible. Before trial the claimant was examined adversely. At that time she testified that she was brought up by the deceased and his wife and at all times treated as a daughter; that upon her removing from his home at the time of her marriage and at other times she told him that there was a place in her home for him when he wanted to come; that she would always have a place for him whenever he wanted to come to her home; that he would be welcome; that she had no agreement with the deceased that he would pay her any amount of money.

"*Q.* There was no other talk or understanding that you had with Mr. Clark? *A.* What do you mean?

"*Q.* You didn't have any talk with the man that died about paying? *A.* No.

"*Q.* Except what you said here? *A.* Yes.

"*Q.* You had no other talk? *A.* No."

The claimant also testified that the deceased had often said that he would remember her for what she had done. She, however, testified that the reason that she kept him was because he had brought her up and because she felt that some day it would be worth it and that she might get something out of it. Upon the hearing she testified that she expected compensation for the services rendered; that she thought she was the only one he had and some day when he was through with it (his property) he would leave it to her; that he made promises lots of times that some day he would think of her. Upon cross-examination her testimony given at her adverse examination was adverted to and the truthfulness of her answers admitted. On redirect examination she testified that the deceased asked if he could come and live with her; that she told him he could, and that the deceased said he would see that she was well paid for it, and that at other times dur-

ing his stay with her he had said that some day he would remember her. The claimant's husband testified that prior to the deceased's taking up his residence with the claimant, the deceased said that he was sick; that he could not live with the Graves, and that he would make it right with them if they would let him live there. Other witnesses testified that the deceased had told them that he was living with claimant, and that he liked to stay there, and that what he had left when he was gone he was going to give to the claimant, and that he figured on leaving claimant his property. Had the court found that the deceased had agreed or promised to pay for his board and room we would be unable to say that such a finding was against the great weight and clear preponderance of the evidence, although most of the evidence tending to support such a conclusion was incompetent, but received without objection. It was clearly within the province of the trial court to weigh the testimony of the plaintiff and her husband, to consider all of the circumstances, and to determine whether the declarations of the deceased testified to by the claimant and her husband were credible. It is our conclusion that the findings of the trial court cannot be held to be against the great weight and clear preponderance of the evidence.

It is the settled law of this state that "where near relatives by blood or marriage reside together as one common family, and one of them renders services to another, and such other furnishes him board and lodging or other necessaries or comforts, a presumption arises that neither party intended to receive or to pay compensation for the services rendered on the one hand, or for the board and lodging or other necessaries or comforts on the other; that they were intended as mutual acts of kindness done or furnished gratuitously." *Estate of Goltz,* 205 Wis. 590, 238 N. W. 374; *Estate of Kessler,* 87 Wis. 660, 664, 59 N. W. 129; *Schmidt's Estate,* 93 Wis. 120, 67 N. W. 37; *Estate of Ghent,* 217 Wis. 631, 259 N. W. 865; *Estate of Shimek,* 222 Wis. 000, 266 N. W. 798.

While the claimant was not related by blood to the deceased, she was the niece of his deceased wife. That relationship by marriage, coupled with the fact that she was taken into the home of the deceased when she was a year and a half old, brought up as his own child and treated as a daughter, requires the application of the established law to the situation here. *Tyler v. Burrington,* 39 Wis. 376; *Ellis v. Cary,* 74 Wis. 176, 42 N. W. 252; *Leitgabel v. Belt,* 108 Wis. 107, 83 N. W. 1111; *Martin v. Estate of Martin,* 108 Wis. 284, 84 N. W. 439. That being true, it was incumbent upon the claimant to prove an express contract by direct and positive evidence, or to prove by unequivocal facts and circumstances that which is the equivalent of direct and positive proof of an express contract. *Estate of Goltz, supra; Estate of Ghent, supra; Estate of Shimek, supra.* This, the trial court found, she had failed to do.

This is concededly a hard case. The claimant was no doubt considered by the deceased as his nearest and dearest relative. She was regarded by the deceased as his daughter. Had she been a daughter she could have done no more for him. The blood relatives of the deceased were apparently indifferent to his welfare. It is unfortunate that the deceased did not make a will or otherwise provide for compensating the claimant for the services rendered, if in truth and in fact it was his intention so to do.

*By the Court.*—Judgment affirmed.