## KAYE vs. CRAWFORD.

*Voluntary payment.—Payee vs. Mortgagee.*

A son remained with his father for a year after his majority, without any agreement as to pay for his services; and at the end of a year, his father, to retain him, transferred to him, for the services of that year, certain personal property which had been mortgaged to a third party, but the mortgage lost from the files. *Held,* that the payment was *voluntary,* and void as against the mortgagee.

APPEAL from the Circuit Court for *Waukesha* County.

Action for damages for the unlawful taking and detention of a mare, alleged to be the property of the plaintiff *Henry Kaye.* Plaintiff claimed to have purchased the mare of his father, Joseph Kaye, in the spring of 1858. Defendant claimed under a chattel mortgage executed to him by Joseph Kaye, January 20, 1858, and a judgment rendered in his favor December 6, 1862, in an action of replevin for said mare, brought by him against said Joseph. He also alleged that plaintiff, at the time of his pretended purchase, had knowledge of said mortgage. On the trial, plaintiff testified in his own behalf, that he bought the mare and another horse of his father in April, 1858, for $200; and took and retained possession of her until she was taken

away, at the direction of defendant, in 1863. On cross-examination, he said: "When I made this bargain, my father owed me for a little over a year's work I did just after I was twenty-one, which he allowed me $200 for. During the year he gave me my board and clothes. He gave me that team for $200, as he had not the money. I told him I would take it, and paid him $20 difference in cash, and afterwards rented his farm. I had worked there on the farm about a year after I was twenty-one. Had thought of leaving home. My father offered me this team for what I had done, and rented the farm to me, and I remained at home." He also testified that when he made this purchase he had no knowledge of the existence of any mortgage upon the mare; and that when he heard that defendant claimed to hold such a mortgage, which was in the fall of 1858, he went to the town clerk's office, and could find none such on file. The defendant introduced evidence that Joseph Kaye, as security for the payment of $135, gave him a mortgage on said mare and other chattels January 20, 1858, which was filed in the town clerk's office, but lost from the files at some time between that and July, 1859.

Verdict for the plaintiff, for the value of the mare, with interest, etc. A motion for a new trial on the grounds, among others, that the verdict was contrary to the law and to the evidence, was denied; and defendant appealed from a judgment on the verdict.

*E. Hurlbut,* for appellant, to the point that there was no legal obligation on the part of plaintiff's father to pay for his services, cited 5 Wis., 472; 16 id., 150; 17 id., 556; 15 Barb., 444; 27 id., 300; 7 Abb., 129; 6 Seld., 189; 3 Rawle, 243; 3 Dev., 348; Wright, 134; 5 Watts & S., 513; 3 Cow., 302.

*Small & Westover,* for respondent, argued that this court

Kaye vs. Crawford.

would not interfere with the finding of the jury merely because it might disagree with them as to the weight of evidence. *Evans v. Bennett,* 7 Wis., 404.

PAINE, J.  The verdict in this case should have been for the defendant.  The testimony of the plaintiff does not show that the services for which his father gave him the team, were rendered in pusuance of any agreement or understanding that they were to be paid for.  On the contrary, the fair inference from his own statements is, that they were rendered without any such understanding; and that he remained at home for a time after he was twenty-one, working as he had worked before.  He says expressly that he had already worked the year, when he made the arrangement with his father for the team.  He says he had thought of leaving home, and his father offered him the team for what he had done, and rented the farm to him, and he staid. This offer of the team seems to have been made as an inducement for him to stay, and it was undoubtedly the first arrangement or understanding that the services which had been already rendered were to be paid for.  This being so, the father was under no legal obligation to pay for them. *Dye and wife v. Kerr and others,* 15 Barb., 444; *Putnam, Adm'r, v. Town, Ex'r,* 34 Vt., 429; *Brown v. Ramsay,* 5 Dutch., 120; *Fisher v. Fisher,* 5 Wis., 472.

It follows that the conveyance of the horses was in law voluntary, so far as the rights of third persons were concerned, and the plaintiff could not hold the horse as against the defendant's prior mortgage, even though it had been lost from the files of the town clerk.

The motion for a new trial should have been granted, on the ground that the verdict was against the law and the evidence.

*By the Court.*—The judgment is reversed, with costs, and the cause remanded for a new trial.