## TYLER vs. BURRINGTON, Adm'x.

CLAIM OF WAGES *by one received into defendant's family in infancy. (1) Contract to pay wages not necessarily implied; may be implied from circumstances. (2) If received as a child, must show express contract. (3) Burden of proof. (4) Express contract defined. (5) Importance of distinction between circumstances from which contract implied, and circumstantial evidence of express contract.*

1. The mere fact of receiving into one's family indefinitely an infant not of kin thereto, does not imply a contract to pay wages, though such a contract may sometimes be implied from the surrounding circumstances.

2. If it appears expressly, or from the surrounding circumstances, that the infant was so received *in the relation of a child*, the law excludes an implied contract to pay wages for his services; but an *express* contract to pay such wages may be established by direct and positive evidence, or by circumstantial evidence equivalent to direct and positive. *Pellage v. Pellage*, 32 Wis., 136.

3. One who, having been received in infancy into a family not of kin to her, seeks to recover for services rendered to such family, has the *burden of proof* to show either an express contract or surrounding circumstances from which a contract can be implied; and if it appears that she was received *as a child*, she must prove an express contract for wages.

4. In such a case the mere expectation on the one part to pay, and on the other part to receive wages, never expressed by the parties to each other, does not constitute an express contract, though, if established by competent evidence, such expectations of the parties may sometimes give color to circumstances tending to show that they entered into an express contract. *Mountain v. Fisher*, 22 Wis., 93, explained.

5. In such cases, juries should receive precise instructions on the distinction between circumstances from which a contract may be implied, and circumstantial evidence of an express contract; and verdicts proceeding on a confusion of these two things should be set aside.

APPEAL from the Circuit Court for *Jefferson* County.

The county court having allowed a claim of the plaintiff against the estate of D. D. Burrington, deceased, for personal services, an appeal was taken to the circuit court. On the trial there, it appeared that in 1860 the plaintiff, then about fourteen years old, being the child of poor parents, went to

live in the family of Dr. Burrington, the deceased; that she was not a blood relative of the family; that she remained in the family most of the time until the death of Dr. Burrington, a period of about ten years; that she was away some of the time on visits; 'that she taught school several terms; that she also attended school, and obtained most of her education during this time; that during all this period her home was at Dr. Burrington's; and that while there, she was accustomed to render services for the family about the house, and to some extent outside of the house. Testimony was introduced by the plaintiff tending to show that her services were such as are usually peformed by servants, and were of considerable value; that the deceased had frequently stated to others that he intended to remunerate her for her services, and that she would receive better pay for remaining at home in his family than for teaching. The evidence for the defense tended to show that the deceased had received the plaintiff into his family agreeing to treat her as his child; and that she had enjoyed good educational advantages while there, and had been treated as one of the family.

The court instructed the jury that "if the relation existing between the claimant and the decedent, as established and maintained by themselves, was the ordinary relation of parent and child, there being no agreement between them that the claimant should receive compensation for her services, nor understanding of the parties themselves that compensation therefor should be received and paid, the claimant is not entitled to recover. * * It was competent for the claimant and the decedent to create by agreement or understanding such relations as they saw fit in respect to services to be performed by the former for the latter, and the care and support to be given by the decedent to the claimant. But inasmuch as the claimant was not the natural child or other blood relative of the decedent, the burden of proof in this case is upon the defendant to show to your satisfaction that the relation actually existing

between the claimant and the decedent was that of parent and child; otherwise it must be presumed that the claimant was to receive compensation for her services, although neither the amount nor the terms of payment were agreed upon, and even though there was no agreement at all in respect to compensation."

Verdict and judgment for the plaintiff. A new trial was denied; and defendant appealed.

*J. R. Bennett*, for appellant, argued, among other things, that the court erred in charging that the burden of disproving a contract lay upon the defendant. The evidence clearly shows that the relation which the deceased sustained toward the plaintiff was that of a parent; and this being the case, there was no presumption that the plaintiff was to be paid for her services. On the contrary, proof of an express contract was indispensable to the maintenance of the action. *Cooper v. Martin*, 4 East, 76; *Williams v. Hutchinson*, 5 Barb., 125; *Green v. Roberts*, 47 id., 521; *Williams v. Hutchinson*, 3 Coms., 312; *Fisher v. Fisher*, 5 Wis., 472; *Mountain v. Fisher*, 22 id., 93; *Shirley v. Bennett*, 6 Lans., 512; 38 How. Pr., 406; 19 Mo., 433. To establish a contract, the evidence must be clear, direct and positive that the relation between the parties was not the ordinary one of parent and child, or of brother and sister, but that of debtor and creditor, or of master and servant. *Hall v. Finch*, 29 Wis., 278; *Duffy v. Duffy*, 44 Pa. St., 402; *Bash v. Bash*, 9 id., 260; *Pellage v. Pellage*, 32 Wis., 136. But little weight should be given to the alleged admissions of the deceased. 1 Greenl. Ev., § 200; *Dreher v. Fitchburg*, 22 Wis., 675.

*G. W. Bird*, for respondent, argued that it is the settled law of this state that circumstances short of an express contract will fix liability in such a case as this, and the charge of the court was correct, citing *Fisher v. Fisher*, 5 Wis., 472; *Mountain v. Fisher*, 22 id., 93; *Hall v. Finch*, 29 id., 278; *Pellage v. Pellage*, 32 id., 136.

RYAN, C. J. "The intention of the parties to any particular transaction may be gathered from their acts and deeds, in connection with surrounding circumstances, as well as from their words; and the law therefore implies from the silent language of men's conduct and actions, contracts and promises as forcible and binding as those that are made by express words, or through the medium of written memorials not under seal." Addison on Cont., 209.

When, without express contract, an infant is indefinitely taken into a family not akin to it, the surrounding circumstances must give construction to the act, and determine whether the infant is so taken as a visitor, or as a servant for wages to be earned by it, or as a boarder or pupil for nurture or tuition for compensation to the head of the family, or as a child adopted by the family in the relation of a child by blood, or in some other peculiar relation. In the absence of proof of surrounding circumstances from which a contract can be implied, it is not the province of the law to impose one upon the parties.

*Fisher v. Fisher*, 5 Wis., 472, was an action by an adult son who remained in his father's family and labored for him after majority, against the father, for the services of the son *sui juris.* It is said by the court that it was incumbent on the plaintiff to show that the ordinary relation of parent and child did not subsist between him and the defendant, and that there was an understanding, that is an express contract, between them that the son should be compensated for his services. This was said *obiter* in that case, but was the direct rule of decision in *Kaye v. Crawford*, 22 Wis., 320, and again in *Pellage v. Pellage*, 32 id., 136. The same rule was applied to a sister living with her brother as a member of his family. *Hall v. Finch*, 29 Wis., 278.

And the rule relating to children by blood appears to apply equally to children by adoption. *Mountain v. Fisher*, 22 Wis., 93. There the plaintiff was an infant, not of kin to

the defendant, in whose family she had lived, and whom she sued for her services in his family. And this court approves the charge of the circuit court to the effect, that if the defendant had received the plaintiff into his family, and the plaintiff had entered it, to be treated as the defendant's child, without other understanding for compensation, the plaintiff could not recover. It is quite apparent, especially in the light of the later cases, that understanding there signifies, as it often does, express contract. Indeed, aside from the authority of that case, it is difficult to comprehend any reason why a child by adoption, sharing the advantages, should not share the disabilities of a child by blood; or why a child received into a family from benevolence should have a larger rule of right in it than a child in its charge by the order of nature. The frequency of such cases shows that such benevolence sometimes meets ungracious return, " through the fraud of some and the avarice and litigiousness of others." *Hall v. Finch, supra.*

The adoption of an infant into a family as a child implies no contract to pay for its services to the family; and an infant so adopted can recover for such services against the head of the family only upon express contract.

The rule of evidence by which such express contract between parent and child, by blood or by adoption, must be established, is laid down in *Pellage v. Pellage, supra.* COLE, J., says: "The rule is, that the evidence of a contract to compensate the services of a child must be positive and direct, and the contract cannot be inferred from circumstances and probabilities." And DIXON, C. J., adds by way of explanation: " It may perhaps be going too far, and be a deduction not authorized from *Hall v. Finch,* to say that, in every case of this kind, there must be positive proof of an express contract for the payment of wages or the making of pecuniary compensation for the services performed. There may undoubtedly exist other facts and circumstances, clear and unequivocal

proof of which, according to the rule of evidence held in such cases, will be equivalent to direct and positive proof of an express contract. An express contract to pay, or the relation of master and servant, may be as fairly and incontrovertibly established by circumstantial evidence as by that which is direct."

And so it is apparent, first, that when the respondent was received in her infancy into the family of the appellant's testator, the mere fact implied no contract to pay her wages for any services she might render to it, though such a contract might be implied from the surrounding circumstances; and, secondly, that if it appeared expressly or from the surrounding circumstances, that she was so received in the relation of a child, the law excludes an implied contract to pay her wages for her services; but that she could recover upon an express contract to pay her, which might be established by direct and positive evidence or by circumstantial evidence equivalent to direct and positive. In what relation she entered the testator's family, was therefore the first question of fact to be determined. If as a servant, there was an implied contract of the testator to pay her wages *quantum meruit.* If as a child, there was no implied contract to pay her wages; and she could recover them only upon express contract with the testator, which it was incumbent upon her to establish.

The learned judge of the court below appears to have been misled into a distinction, not sanctioned by the rule, between a child by blood and a child by adoption. And so, in his view, because the respondent was not of kin to the testator, there was a presumption that she was taken into the testator's family under a contract to pay her for her services to it, and the *onus* of disproving such a contract lay with the appellant.

So the jury was instructed. This is error. The *onus probandi* of her right to recover was on the respondent. The mere fact of her being taken into the testator's family did

not establish her right. Failing to prove an express contract, it rested with her to establish an implied contract by the surrounding circumstances. If the surrounding circumstances showed that she was taken into the testator's family as a child, then it rested with her to prove an express contract with the testator that he should pay her wages.

And mere expectation on his part to pay and on her part to receive wages, would not constitute an express contract, unless by mutual expression of the expectation it became consensual. Resting in the several minds of the parties, unexpressed to each other, independent and changeable, their expectations would tend rather to rebut than to establish an express contract. For upon contract expressly made, expectation would cease. In such cases expectation looks rather to an implied than an express contract. If established by competent evidence, as entering into the *res gestæ*, such expectations of these parties might give color to circumstances tending to show that they ripened into a mutual understanding, an express contract. This is apparently the sense in which the rather loose word is used in *Mountain v. Fisher*, as the context of the opinion shows, and is the construction put upon it in all the later cases; especially in *Pellage v. Pellage*, both opinions being by my brother COLE, who quite concurs in my view of them.

And, though the express contract required by the rule may be established by circumstantial evidence, vague, doubtful, ambiguous circumstances are insufficient for that purpose; but only such circumstances, clearly proved, as are equivalent to direct and positive proof. *Pellage v. Pellage.* And, as peculiarly applicable here, we again quote from GIBSON, C. J., in *Bash v. Bash*, 9 Pa. St., 260, cited in *Hall v. Finch.* "Every sane man must be allowed to make his own contract, as well as his own will. And to prevent jurors from making it for him according to their peculiar notions of fitness and propriety, we have held that the evidence of a contract to

compensate the services of a child must be positive and direct. But evidence, clear and satisfactory in the estimation of a jury, may be neither. It may be no more than presumptive and inferential; and if that were sufficient, it would be easy to see how every case of the sort would go. To an unpracticed eye, loose and inconsiderate expressions.... and presumptions or probabilities resting on circumstances, may seem perfectly clear and satisfactory; but they constitute not the proof by which such a contract is to be established in conformity to the judgments of this court." So far as this passage appears to exclude circumstantial evidence of an express contract, we do not adopt it. But we regard it, as indeed the whole opinion from which it is taken, as full of instruction in the case before us. It is especially suggestive of the danger, in such cases, of confounding circumstances from which a contract might be implied, with circumstantial evidence of an express contract; of the necessity of precise instruction to juries on the distinction; and of the duty of courts to set aside verdicts proceeding on such a confusion.

In this case, it is equally the duty of the court to support an express contract, if *bona fide* made and clearly established, in favor of the respondent, against her benefactor, the testator's estate, and to protect his estate from a contract to be implied after his death from his benevolence to the respondent during his life.

For the reasons stated, the judgment of the court below is reversed, and the cause remanded for a new trial.

*By the Court.* — So ordered.