Estate of Skinner: Anderson, Administrator, Appellant, vs. Kendall, Respondent.

*February 10—March 9, 1926.*

*Executors and administrators: Claims against decedents: Services rendered by relative: Presumption.*

While the law implies a promise to compensate valuable services rendered, the facts in this case, which disclose that a niece lived with her aged aunt as a guest or member of the household, rendering services of kindness and of helpfulness toward her, and after the aunt became seriously ill acted as a nurse, furnish every circumstance necessary to raise the presumption that the services were gratuitously rendered.

Appeal from a judgment of the county court of Eau Claire county: George L. Blum, Judge.  *Reversed.*

This is an appeal from a judgment allowing in part claimant's claim for services as a practical nurse rendered to the deceased during her lifetime.  At the time of her death deceased was an old lady eighty-seven years of age, and for

a number of years had been a widow. Nella F. Walden was also a widow and a niece of the deceased. The deceased had a home in Eau Claire and Mrs. Walden had a home in Florida. For a number of years it had been customary for the deceased to spend her winters with Mrs. Walden in Florida and for Mrs. Walden to spend the summers with the deceased in Eau Claire. The claimant, *Harriet Kendall,* was also a widow and a niece of the deceased. For a great many years she lived just across the street from the home of the deceased in Eau Claire. The relations between the claimant and the deceased during all these years had been not only friendly but affectionate. During the time they were such near neighbors in Eau Claire the claimant visited in the home of the deceased daily, and when the father of claimant, who was a brother of the deceased, was taken ill, in his last sickness she took him to the home of the deceased, where he was cared for until his death, a period of eight months. During all of this time the claimant, and during a portion of the time her children, lived in the home of the deceased.

For some years prior to 1923 the claimant lived in St. Paul, where she maintained a rented flat and earned her livelihood by rendering services as a practical nurse and masseuse. During such years she spent much time at the home of the deceased during the summer months. About the 1st of May, 1923, she went from St. Paul to Eau Claire, opened the house of the deceased, and had it in readiness when she and Mrs. Walden arrived from Florida to spend the summer, as had been their custom for a number of years. The evidence does not disclose whether this was at the request of Mrs. Skinner. After the arrival of Mrs. Skinner and Mrs. Walden from Florida, the claimant remained in the home of the deceased, rendering acts of kindness and helpfulness to the deceased, such as combing her hair, etc. Her relation to the household was that of a member of the family, or a guest.

On June 29, 1923, the deceased suffered a stroke of paralysis, causing more or less physical disability. During the first three weeks following the stroke, a night nurse to care for Mrs. Skinner was employed. The claimant, according to her testimony, cared for Mrs. Skinner during the daytime, rendering her services as a practical nurse and masseuse. This continued until about November 1, 1923, when the time came for Mrs. Skinner and Mrs. Walden to return to Florida. At this time Mrs. Skinner asked the claimant, *Mrs. Kendall,* if she would go to Florida with her, to which *Mrs. Kendall* replied: "I will go, Aunt, if you will pay my fare down and back and pay Mrs. Walden for my board while I am there." To this Mrs. Skinner agreed, and the claimant went to Florida with Mrs. Skinner and Mrs. Walden, where she continued to render Mrs. Skinner services as a nurse and masseuse until about the middle of January, when she left. It is undisputed that she did not leave because of any trouble between her and the deceased, but rather because of strained relations arising between her and Mrs. Walden.

The claimant filed a claim with the county court claiming compensation for her services at the rate of one dollar per day from the 1st day of May until the deceased was stricken on the 29th of June, and for $30 per week from the 29th of June until the time she quit in Florida. The court disallowed any compensation prior to the time the deceased sustained the stroke. The claim for services as a practical nurse was allowed at $18 per week for fifteen weeks, or until they left for Florida. All claim for compensation for services rendered in Florida was disallowed. From this judgment the administrator appealed.

*Fred Arnold* of Eau Claire, for the appellant.

For the respondent the cause was submitted on the brief of *Farr & MacLeod* of Eau Claire.

OWEN, J.    While the law implies a promise to compensate valuable services rendered, there is a well established exception to this general rule, which has found frequent expression by this court in the following language:

"Where near relatives by blood or marriage reside together as one common family, and one of them renders services to another, and such other furnishes him board and lodging or other necessaries or comforts, a presumption arises that neither party intended to receive or to pay compensation for the services rendered on the one hand, or for the board and lodging or other necessaries or comforts on the other; that they were intended as mutual acts of kindness done or furnished gratuitously.    And the relation of aunt and nephew seems to be within the rule."    *Estate of Kessler,* 87 Wis. 660, 59 N. W. 129; *In re Schmidt's Estate,* 93 Wis. 120, 67 N. W. 37; *Williams v. Williams,* 114 Wis. 79, 89 N. W. 835.

In the latter case it was also said:

"Where there is close relationship between the parties, and they live under the same roof, the rule is almost universal that services rendered by one to the other are presumed to be simply natural acts of kindness, and intended as a gratuity.    Such are most of the recorded cases."    And further: "The law would not imply a promise on the part of a guest to pay for board and lodging, nor, on the other hand, would it imply a promise to pay for services rendered by him while receiving the hospitality accorded to him as a guest."

In that case it was held that services rendered by one to his brother while he was a guest in the home of his brother were presumed to have been rendered gratuitously, while such presumption did not obtain where the brother continued rendering the same sort of service after taking up his abode with his own family in another house.

The facts of this case furnish every circumstance necessary to raise the presumption that the services were gratui-

tously rendered within the doctrine of the principle above stated. There was a close relationship between the parties, a friendship bordering upon affection; a living under the same roof, either as a guest or member of the family. During such time the claimant rendered such service as one member of a household would naturally render to another, or as a guest would render to a host. There was no talk of compensation and, evidently, no thought of compensation, on the part of any one. The claimant enjoyed the friendship, the companionship, and the hospitality of the deceased, and contributed by her companionship and helpfulness to the comfort and pleasure of the deceased. There seems no reason whatever to assume that there was any thought on the part of any one that the claimant was to be compensated for her services up to the time that the deceased suffered the stroke. Until such time her relations with the household of the deceased were the same as those maintained upon numerous occasions during the preceding years. Was there any change in those relations when the deceased suffered the stroke? True, she perhaps needed greater care and attention, but that circumstance in no wise changed the relations existing between the parties, or between the claimant and the household of which she was then a member. Although the condition of deceased was such as to require greater attention and services of a somewhat different character, nevertheless the prior relations continued, and the services rendered by the claimant were presumptively rendered in the same spirit, and were prompted by the same instincts and the same considerations.

The evidence in this case reveals a rather beautiful relation, an affectionate friendship between the deceased and the claimant, and any suggestion that the services rendered by the claimant to her aunt were rendered in the hope or expectation of reward or compensation is to profane that relation. At no time during the life of Mrs. Skinner did the claimant belie the friendship existing between her and

her aunt by any word or insinuation to any one that the aunt was in any manner indebted to her for any services which she had rendered her aunt. Not only the presumption raised by law, but the attitude and conduct of the claimant during the lifetime of the deceased, stamps the services for which claimant demands compensation as gratuitous, and gives rise to no claim in behalf of the claimant against the estate of Mrs. Skinner.

*By the Court.*—Judgment reversed, and cause remanded with instructions to disallow the claim.