Estate of Goltz: Shaffer and another, Appellants, vs. Miller, Respondent.

*September 18—October 13, 1931.*

For the appellants there was a brief by *Richmond, Jack-man, Wilkie & Toebaas* of Madison, and oral argument by *Oscar T. Toebaas.*

. For the respondent there was a brief by *Wegener & Roick* of Madison, and oral argument by *Virgil H. Roick.*

NELSON, J. William Goltz, an aged bachelor, died on the 2d day of April, 1930. By the terms of his will all of his property, appraised at nearly $10,000, was bequeathed and devised to three nieces and a nephew, Frances Shaffer, Mabel Kurt (appellants), Clara Miller, and August Goltz. The will, however, provided that it was the testator's desire that the partnership existing between him and his brother Frank Goltz shall continue until the death of his brother Frank Goltz, and the latter's wife, Anna Goltz. Clara Miller, one of said beneficiaries, is the wife of the claimant.

For a number of years prior to 1919 deceased and his brother Frank Goltz, who was the father of the four beneficiaries hereinbefore mentioned, resided together on a farm owned jointly by them. The family consisted of the deceased, his brother Frank, the latter's wife Anna, and the three nieces and nephew hereinbefore named. The farm

was worked by the two brothers up until the year 1919 when a residence in Sauk City was jointly purchased by the brothers, to which Frank and his family removed, with the exception of Clara Miller, who had just previously married the claimant herein. At the time of the removal of the Frank Goltz family to Sauk City the deceased accompanied them and remained there for a few days, not to exceed a week, but did not take his trunk or bed or belongings with him but left them on his farm which he had theretofore occupied for many years as hereinbefore stated. About the time that the Frank Goltz family was contemplating removal to Sauk City the farm belonging to both Frank and the deceased was leased to claimant, who had recently theretofore married Clara Goltz, one of the daughters of Frank Goltz. Just what the terms of the lease, which rested in parol, were, does not appear, nor does it appear what, if any, agreement was made between claimant and his wife Clara on the one hand and the deceased on the other under which deceased continued to remain on the farm, to have his room there and board furnished to him. However, it is reasonably clear that whatever the arrangement was, if any, no thought was entertained by claimant, expressed to the deceased, that a charge was to be made for the room, board, and care furnished. No promise of the deceased to compensate claimant was ever made. It is apparent that from 1919 up to April 1, 1926, no charge against the deceased was ever made or contemplated. That such is the fact is practically conceded. After claimant leased or began to work the farm the deceased performed services about the house, yard, and barn such as might ordinarily be expected to be performed by an aged member of a family whose active working days are over. In the spring of 1926 the deceased broke his arm and for a time, in consequence thereof, was incapacitated from doing work,

and reasonably required additional assistance and services which theretofore had not been required or given to him. ·The broken arm seems to have mended in a normal way. In·the fall of 1926 deceased was ill for some time with a hard cold, ·which may have been pneumonia, and which confined the deceased to his bed for a few days. With these exceptions, however, the deceased seems not to have been particularly invalided until shortly prior to his death, when he suffered ·a stroke which, after a few days spent at the home, required his removal to a hospital, where he remained until his death. Much testimony was received relating to the meagerness of the work ·performed by· deceased, especially during the latter·years of his life, his habit of eating excessively, his lack of personal cleanliness, his offensiveness due to· his inability to control his urine and at times his bowels. All of this testimony was no doubt offered and received for the purpose of showing· that the deceased was considerable·of a burden to the claimant and his wife; that such services as were performed by deceased were of no material value or consequence to the claimant; that his appetite required an abnormal amount of food to satisfy and that his habits and lack of cleanliness rendered his presence in the household offensive to claimant and his family. There was much testimony tending directly to contradict the testimony just·hereinbefore summarized.

There is no testimony in the record to the effect that the deceased ever promised to compensate claimant for the services performed; that he· ever promised to leave his property to him or any part thereof ·by will or otherwise; or that deceased ever intended to compensate claimant. Such declarations have· been, at times, held to be sufficient in connection with other circumstances to ·prove circumstantially an express contract and thereby satisfy the rules laid down by this court in numerous decisions.

The law is well established that "where near relatives by blood or marriage reside together as one common family, and one of them renders services to another, and such other furnishes him board and lodging or other necessaries or comforts, a presumption arises that neither party intended to receive or to pay compensation for the services rendered on the one hand, or for the board and lodging or other necessaries or comforts on the other; that they were intended as mutual acts of kindness done or furnished gratuitously." *Estate of Kessler,* 87 Wis. 660, 664, 59 N. W. 129; *Schmidt's Estate,* 93 Wis. 120, 67 N. W. 37; *Williams v. Williams,* 114 Wis. 79, 89 N. W. 835; *Estate of Skinner,* 189 Wis. 390, 207 N. W. 942.

A careful consideration of all the facts and circumstances which the entire record reveals leaves no doubt that this case falls within the rule laid down in the *Kessler Case* and frequently thereafter approved by this court.

Since the facts of this case bring it within the rule stated and give rise to the presumption of gratuitous services, it was incumbent upon the claimant to prove an express contract by direct and positive evidence or to prove by unequivocal facts and circumstances that which is the equivalent of direct and positive proof of an express contract. *Hall v. Finch,* 29 Wis. 278; *Tyler v. Burrington,* 39 Wis. 376; *Pellage v. Pellage,* 32 Wis. 136; *Leitgabel v. Belt,* 108 Wis. 107, 83 N. W. 1111.

That the claimant and deceased lived in the same family and under the same roof and performed services each for the other from 1919 up to the spring of 1926 is conceded. That there is nothing in the record rising to the dignity of proof of an express contract either directly or circumstantially, subsequent to that time, cannot be gainsaid. It seems clear that when such a relationship once exists between members of a family closely related by blood or mar-

riage it presumptively continues until changed or overcome by positive and direct proof of an express contract or by circumstances from which an express contract to compensate may be inferable. The testimony of Clara Miller, the wife of claimant, and one of the beneficiaries under the will, and also the testimony of a hired man who worked on the place in 1926, as to declarations made by the deceased to Clara, falls far short of proving an agreement by deceased to compensate claimant. On one occasion back in 1926, according to their testimony, when Clara was assisting deceased in putting on his clothes and shoes, she asked him what she was going to get for all her bother and the deceased replied that she had everything in her hands and had nothing to worry about. On another occasion she brought a glass of water to the deceased at his request and upon handing him the water asked what she was going to get for that, and he said "I shouldn't worry, I would get all his property, all his property was in my hands." That such declarations, even if made to one competent to testify to them, are not of that positive and direct kind of circumstantial evidence which tends to prove an express contract to compensate by will or otherwise, seems indeed obvious. Conceding that such testimony might have some probative value to support a claim made by Clara, it cannot be said that evidence of such declarations made to her can support a claim made by her husband.

It is rather significant that no demand for compensation was ever made of the deceased in his lifetime although he had income from the farm which was paid to him by the claimant and had other property in the form of moneys in bank and certificates of deposit. When the fact is considered that the deceased lived with claimant and his wife on this farm for about eleven years prior to his death and that Clara received no more favorable consideration

under his will than her brother and sisters, it may give rise to feelings that possibly the deceased did not deal quite justly with Clara under the circumstances; but it must be remembered that he was living with claimant and his wife on his own farm which he had owned jointly with his brother Frank up to 1924 and with the latter's widow thereafter. It is not unlikely that the terms of the agreement under which the farm was worked by claimant may have afforded the latter a favorable opportunity to profit thereby. In any event, a court cannot, by indirection, change the will of a testator so as to accomplish what might seem a more equitable division of his estate.

Claims of this nature should be carefully scrutinized and the evidence offered in support of them carefully weighed. Such claims should not be allowed unless founded on express contract or on positive and direct proof of circumstances amounting to the equivalent of an express contract.

Courts are not permitted to make express contracts for deceased persons when no such contracts have in fact been made by them. Persons related by blood or marriage who reside in a family and perform services for each other should not wait until death has closed the lips of him for whom such services were performed before demanding compensation or bringing home to such person knowledge that such compensation is expected and will be claimed. After death it is obviously too late to make a contract for compensation when none has theretofore in fact been made, and under circumstances where a contract cannot be implied.

The mere fact that the advanced age of a member of such a family brings to those performing services for him greater burdens and responsibilities is not sufficient to prove an express contract to compensate. *Estate of Skinner, supra.* In the absence of an express contract in a situation like this,

compensation cannot be awarded out of mere equitable considerations however appealing they may be.

*By the Court.*—For the reasons stated the order of the county court of Dane county allowing the claim of Norbert Miller against the estate of William Goltz, deceased, is reversed, with directions to disallow said claim.