ESTATE OF GHENT: HAMMOND, Claimant, Respondent, vs. GHENT, Executor, Appellant.

*March 4—April 2, 1935.*

For the appellant there was a brief by *Rush & Devos* of Neillsville, attorneys, and *Goggins, Brazeau & Graves* of Wisconsin Rapids of counsel, and oral argument by *Theo. W. Brazeau.*

For the respondent there was a brief by *Donovan & Gleiss* of Tomah, and oral argument by *T. P. Donovan.*

WICKHEM, J.   The sole question in this case is whether the evidence sustains the finding of the jury that the services, board, and room were furnished deceased under an express contract obligating him to pay their reasonable value. The claimant's husband is a nephew of the deceased.   Claimant and her husband owned their home in the village of Cataract, Wisconsin, and eighty acres of wild land, of which some three acres were cultivated.   Deceased first came to claimant's home in the summer of 1921.   Prior to that he had lived upon a farm.   He stayed at claimant's home from time to time each year up to 1932, and while at claimant's home the evidence sustains the finding that he was furnished

board, room, and services of the reasonable value of $4 per week. In view of the relationship between the parties, the rule as stated in *Estate of Goltz,* 205 Wis. 590, 238 N. W. 374, is applicable:

"The law is well established that 'where near relatives by blood or marriage reside together as one common family, and one of them renders services to another, and such other furnishes him board and lodging or other necessaries or comforts, a presumption arises that neither party intended to receive or to pay compensation for the services rendered on the one hand, or for the board and lodging or other necessaries or comforts on the other; that they were intended as mutual acts of kindness done or furnished gratuitously.' . . . Since the facts of this case bring it within the rule stated and give rise to the presumption of gratuitous services, it was incumbent upon the claimant to prove an express contract by direct and positive evidence or to prove by unequivocal facts and circumstances that which is the equivalent of direct and positive proof of an express contract."

See also *Estate of Skinner,* 189 Wis. 390, 207 N. W. 942; *Leitgabel v. Belt,* 108 Wis. 107, 83 N. W. 1111; *Ellis v. Cary,* 74 Wis. 176, 42 N. W. 252; *Pellage v. Pellage,* 32 Wis. 136; *Tyler v. Burrington,* 39 Wis. 376. The rule being well established, the question is whether the evidence in this case, which is not direct in its probative tendencies, furnishes sufficient circumstantial evidence of an express contract to pay. While an express promise must be shown, such a promise may be established by circumstantial evidence. *Leitgabel v. Belt, supra.* The testimony relied upon to create a jury question upon the point may profitably be reviewed.

The claimant testified that she expected to receive compensation for her services. Her husband testified that some six months or a year after he had come to their home, deceased said, "Hulda is awful good to me and I will see she gets her pay." In the fall of 1933, deceased told claimant's

husband that "he was going to pay Hulda for what she had done and pay her well." On another occasion he told claimant's husband that "I am going to Neillsville and get some papers made out. I want to see she gets paid for what she has done and if I do not have papers made out she will not get anything." To other witnesses deceased likewise made the statement that he was going to see that claimant "was well paid for what she has done." To another witness, that "he would have things fixed so she would be well paid." This is a fair sample of the evidence relied upon. It is argued by respondent that these declarations, coupled with the fact that deceased received these services in the home of the claimant, and that a record was kept by claimant of such services, circumstantially evidenced an express contract between the parties.

We are unable to assent to this conclusion. In *Tyler v. Burrington, supra,* the court points out the necessity for preserving a careful distinction between an implied contract and an express contract. The court goes on to say:

"And mere expectation on his part to pay and on her part to receive wages, would not constitute an express contract, unless by mutual expression of the expectation it became consensual. Resting in the several minds of the parties, unexpressed to each other, independent and changeable, their expectations would tend rather to rebut than to establish an express contract. For upon contract expressly made, expectation would cease. In such cases expectation looks rather to an implied than an express contract."

Such expressions as are here involved do not circumstantially establish that an express contract had previously been entered into between the parties. In *Estate of Kessler,* 87 Wis. 660, 59 N. W. 129, it is said that such expressions of expectation in connection with other testimony may give color to the latter and show that the expectations ripened into an express contract. It will be noted, however, that the *Tyler Case* expressly states, and the *Kessler Case* strongly

implies, that the probative tendency of testimony of this character is not to evidence that an express contract has been entered into (for, as stated in the *Tyler Case,* the evidence rebuts rather than establishes this), but to further the conclusion that an express contract was entered into at some later time as a result of the "ripening of expectations." Here the evidence offered was subsequent to the time of the alleged express contract, and under the doctrine of the *Tyler Case* cannot be probative of the fact of its execution. There are no other circumstances which tend to show that the parties had entered into an express contract for claimant's recompense. The fact that claimant kept some sort of a record of her services rises to no greater dignity, standing alone, than her expectation of payment. We fail to see any materiality in the fact that deceased came to claimant's house and that the services were furnished him in her establishment. This is quite as consistent with an ordinary visit by one relative to another as with any other conclusion, and, in fact, had she gone to his house to render services to him, it is not clear that the evidence would not be somewhat stronger in claimant's favor.

In view of these conclusions, it must be held that the evidence does not sustain the verdict.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing plaintiff's claim.