NORTHERN HOTEL COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*November 13—December 8, 1936.*

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth Grubb* and *Arthur Larson* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

FRITZ, J.   In the proceedings before the Industrial Commission and the circuit court, as well as on this appeal, the plaintiffs herein contended that Powell M. Peterson was not entitled to compensation death benefits, as a dependent, on account of the injury and death of his father, Martin Peterson, while performing service as an employee of the Northern Hotel Company.   There was no conflict in the evidence which was material on that issue.   On and for several years prior to his injury on December 16, 1934, the father was employed by the Northern Hotel Company as a janitor and fireman on duty from 5:30 p. m. to 5:30 a. m. at a wage of $80 per month.   He owned a home in which he lived with his daughter and her husband, who, in lieu of otherwise compensating the father for the use of the home, maintained the household, furnished his meals, attended to his washing, etc.   At the time of the father's death the son, Powell, was

thirty-five years of age. He had learned bookkeeping in school, and thereafter supported himself by working as a bookkeeper and salesman for a concern until it closed its plant in 1932. Then he was employed and lived on a farm until he was discharged when the fall work ceased in 1932. Because he was unable to find other employment, his father took him into his home and, until his death, provided him with board, lodging, clothing, and everything that he needed to live on, including some money. The father paid $5 per week to his daughter for the son's board and washing. During that period the son had registered for employment at two industrial plants, and in the summer and fall of 1934 had gone "up to the dams" several times to obtain employment in connection with public work under construction there. However, as he failed to obtain any work there or elsewhere, he, at his father's suggestion, helped the latter until his death, with reasonable regularity from 8:30 p. m. to 3 a. m. to do his work at the hotel as janitor and fireman. During that period he was not entitled to and did not receive any income or support other than that which his father provided.

Upon the evidence taken by an examiner he found that due to the depression the applicant was unable to obtain work and lived with his father in his father's home, and assisted him with the work which he was doing for his employer; that, in return for the assistance thus rendered his father, he supplied his son with his board and room and also gave him some money for his personal needs; and that the son performed the work at the request of his father and worked steadily with him until his father's death. Upon those findings the examiner concluded that the son was not dependent upon the father, but was and had been for two years prior to his death employed by him as a helper, and in return for the help so rendered was paid by being furnished board and

room, clothing, and money for his personal needs. Upon that conclusion the examiner ordered the dismissal of the son's application for compensation.

However, the Industrial Commission, upon reviewing the evidence and the examiner's findings and order, found, in addition to the examiner's findings, that the agreement as to the amount to be paid to the deceased's daughter for the items supplied by her to the applicant was solely between the deceased father and his daughter; that there was no agreement between the parties as to payment for the work to be done by the son; that he received nothing of value for the work which was done, except as he continued to receive his support from his father as theretofore; that no contract of employment was at any time made between the son and his father; and that such work as was performed was gratuitous on the part of the son. The commission, upon those facts, found and concluded that the son was totally dependent upon the father at the time of the latter's injury and death, and, therefore, the son became entitled to a death benefit, which the commission then awarded and ordered to be paid to him by the plaintiffs.

As there is no material conflict in the evidence, the ultimate question is whether the commission erred in finding and concluding that the son was wholly dependent upon his father at the time of his injury. The status in respect to the issue of dependency must be determined as of the date of the injury to the employee in view of the provision in sec. 102.51 (4), Stats., that,—

"Questions as to who constitute dependents and the extent of their dependency shall be determined as of the date of the injury to the employee, and their right to any death benefit shall become fixed as of such time, irrespective of any subsequent change in conditions; . . ."

By reason of that provision, the conditions as they existed at the time of a deceased employee's injury must, under our

statutes, be held to control in determining the question of dependency. Consequently, in respect to the determination of that issue, there are not applicable in this jurisdiction the propositions stated in *Gherardi v. Connecticut Co.* 92 Conn. 454, 103 Atl. 668, 670, that in that respect the law does not necessarily accept conditions as they exist at the time of a workman's injury, and that it rather looks to all circumstances to discover what in fairness and right they ought to be.

The only definitions in our compensation act as to what persons are to be considered dependents are found in subs. (1) and (2) of sec. 102.51, Stats. In so far as is here material it suffices to note that it is provided in sub. (1) of that section that a deceased employee's surviving spouse living with the employee at the time of the latter's death, or a surviving child, under eighteen years of age, or over that age but physically or mentally incapacitated from earning, living with such employee at that time, and there being no surviving parent, shall be conclusively presumed to be solely and wholly dependent for support upon that employee; and that it is provided in sub. (2) of that section that,—

"No person shall be considered a dependent unless a member of the family or a spouse, or a divorced spouse who has not remarried, or lineal descendant or ancestor, or brother or sister of the deceased employee."

In as much as the applicant herein is over eighteen years of age, and is not physically or mentally incapacitated, he is, of course, not included within the class which is conclusively presumed, under sub. (1) of sec. 102.51, Stats., to be dependent upon a parent. But, on the other hand, in as much as it is undisputed that he was not only a lineal descendant but also a member of the family, he is not absolutely excluded by sub. (2) of that section from being considered a dependent under the compensation act. There is nothing in

that section or elsewhere in the compensation act because of which an applicant who is a lineal descendant of a deceased employee, and is in fact wholly dependent on such an employee at the date of the latter's injury, cannot be considered a dependent merely because he is over eighteen years of age or is not incapacitated from earning.

In so far as the term "dependent" is defined in the compensation act, and by this court in passing upon that act in that respect in *Janesville S. & G. Co. v. Industrial Comm.* 197 Wis. 421, 222 N. W. 317; *Milwaukee Casket Co. v. Industrial Comm.* 201 Wis. 516, 230 N. W. 627; and *McKesson-Fuller-Morrisson Co. v. Industrial Comm.* 212 Wis. 507, 250 N. W. 396, the commission was warranted in holding that, if (as it found) Martin Peterson was at the date of his injury supporting the applicant without any contractual obligation to do so, then he was a dependent and entitled to the death benefit, even though he was then in good health and capable of supporting himself if he had been able to obtain other employment.

In the *Janesville S. & G. Co. Case, supra,* the claimant, who received her support from an injured employee who was her father and in whose household she lived, was in good health and could have earned her support elsewhere. The employer contended (as do the plaintiffs herein) that dependency, as understood in the compensation law, means actual dependency in fact; that a dependent within the law must be incapable of earning his own support in whole or in part; and that one may not become dependent by his voluntary act. This court, in declining to sustain those contentions, said in respect to them,—

"The legislature may very well have taken that view if it chose to do so. The question here is, did it do so, or did it provide that one who draws her sole support from a parent, without any contractual relation and with no other means of

support, is wholly dependent? Our act was largely modeled after the English act, and decisions under the English act are valuable aids in the construction of our act, especially decisions prior to our law. . . .

"It is unquestioned that claimant was drawing her entire support from her father at the time of his accident resulting in his death. Does the fact that claimant was at that time capable of earning a living wage take her out of the class of dependents provided for in the act? . . .

"Turning to the decisions under the English act, we find the question has been definitely decided in favor of the claimant's contentions."

Then, after citing and reviewing the decisions in England, California, Indiana, and Massachusetts, this court said,—

"No case has been called to our attention, under facts similar to the instant case, which holds a contrary doctrine. In line with these decisions and with the apparent legislative intent, we think the judgment of the circuit court should be affirmed."

That decision in the *Janesville S. & G. Co. Case* was followed in *Milwaukee Casket Co. v. Industrial Comm., supra,* in which the applicant for death benefits was being paid $100 per month for her services for a physician when her father had her come home to take care of her mother and his household. Later he paid her $15 a month but there was no contract between them. She continued in the household under those circumstances after her mother's death, and, upon her father's death as the result of an injury sustained while he was serving in his employment, she applied for and was awarded death benefits as a dependent who was entitled to such compensation upon the injury and death of her father. In sustaining that award this court said,—

"This case is ruled by *Janesville S. & G. Co. v. Industrial Comm. (supra)*. In that case the authorities are fully re-

viewed, and we are satisfied that the decision correctly states the law, as applied to the facts of this case, as well as to that case."

In addition to the authorities which were then cited in support of that rule there may be noted the case of *Gonzales v. Chino Copper Co.* 29 N. M. 228, 222 Pac. 903.

However, the appellants herein contend that, notwithstanding the reasons stated in the authorities cited and this court's definite ruling after thorough consideration of the problem, a claimant's ability to work is as much a resource available to him for his support as a bank account would be, and that therefore the only question in respect to dependency is whether work was reasonably available by the expenditure of such efforts as ought fairly to be expected of the claimant. Appellants rely upon the decisions in *Gherardi v. Connecticut Co., supra,* and *Ferriter's Case,* 269 Mass. 267, 168 N. E. 747.

In the *Gherardi Case* the claimant, a twenty-two-year-old son, who was able to work but not in robust health, claimed to be dependent upon his father, although, only three months before the latter's death in 1915, the son had voluntarily quit employment in which he could have continued, and was again working steadily at the time of the hearing of his application eleven months after his father's death. It was in connection with those facts that the court, in holding that the son was not a dependent entitled to compensation, said,—

"Dependency involves the existence of another important condition. One may live in idleness and actual dependence without being what our compensation law regards as a dependent. No such encouragement is given to sloth and conditions inducive of pauperism as would result from the continuance at an employer's expense of habits of indolence on the part of would-be dependents."

In *Ferriter's Case, supra,* the claimant, a twenty-two-year-old son, had voluntarily quit his job in 1926 because he did

not like the work, and thereafter lived at home on his father's earnings because he was unable to find employment suitable to him. In holding that he was not entitled to compensation under such circumstances the court said,— .

"At the time of the injury the claimant relied wholly on his father for support and all his support came from his father. . . . These facts alone, however, do not as a matter of law require the conclusion that the claimant was 'dependent' within the meaning of the statute. Though proof that a person could not have subsisted without aid from the employee is not essential to establish the existence of a relation of dependency (*McMahon's Case, supra*), dependency implies some degree of need. . . .

"It follows that a person who is within the class of possible dependents and not within the class of those 'conclusively presumed' to be dependents [citations] cannot refrain from the use of resources, including the ability to work, reasonably available to him for his support under all the circumstances of the case and thereby make himself 'dependent' upon the person who actually supports him."

Those statements, quoted from the opinions in the two cases last cited, may have been appropriate in view of the facts that the claimant in each of those cases had voluntarily quit employment in which he could have continued and had thus made himself dependent by refraining from using his ability to work, which constituted a resource that was then reasonably available to him for his support. There is a very material distinction, however, between the facts in those cases relating to voluntary unemployment in 1915 and 1926, respectively, and the facts and the applicant's unemployment in the case at bar, in respect to which the Industrial Commission, as well as the examiner, found that "due to depression conditions, applicant was unable to obtain work and lived with his father in the latter's home." That is in effect a finding that the applicant's ability to work was not an available resource for his support at the time of his father's

injury; and a finding to that effect is reasonably warranted in this case by the evidence in relation to the applicant's inability to obtain employment notwithstanding his attempts to obtain employment, and his willingness to work as was manifested by his regularly helping his father; and the well-known facts as to the existing depression, and resulting unemployment of a very large portion of our population, of which the commission, as well as the courts, can take judicial notice. Those facts, and the findings warranted thereby, negative in this case any assumption that the applicant refrained from using his ability to work as a resource which would otherwise have been reasonably available to him for his support. Involuntary unemployment in consequence of the depression during the last six years does not necessarily indicate that an unemployed applicant for death benefits under the compensation act was inclined to live in idleness, sloth, or similar conditions inducive to pauperism, as was said in the *Gherardi Case, supra,* in which the claimant had voluntarily quit his employment in the year 1915. Because of the unavoidable unemployment due to the present depression, an applicant's ability to work, instead of being a resource reasonably available for his support, may have become, without any fault on his part, truly as much a "frozen asset" unavailable for his present support as "frozen" credits or investments in securities may be when nothing can be realized thereon for the time being.

There remains the question whether the evidence warranted the commission in holding that the applicant was dependent upon his father for support, although he was assisting his father do his work at the hotel during the period that the latter furnished him with board, lodging, clothing, and money for his personal needs. In respect to those matters the son testified as follows,—

"*Q.* How did it happen that you started to help him? *A.* Well, I was staying around home, and he was paying for my board and room and expenses, and he said, 'You might

as well come down to the hotel and help me and learn that bit,' and I was glad to do that because it was something to learn, and I didn't have anything else to do.

"*Q*. Did he agree to pay you anything for that? *A*. Well, he paid all my living expenses, bought my clothes and everything. He would have done that whether I went down there to help him or not.

"*Q*. But he requested you to go down? *A*. Well, he said, 'You can go down and help me.' He didn't force me to or anything like that. He said, 'You can go down and help me and learn that business.' Certainly, he asked me to, but naturally I would be willing to as long as I was getting my bread and butter for doing it."

In passing upon that testimony, in connection with the other evidence on the subject, the commission had to take into consideration the rule that, whenever the family relationship exists between the one seeking to recover and the one sought to be charged, and services are rendered one to the other within the family, the presumption is that they were rendered gratuitously. As the court said in *Hall v. Finch,* 29 Wis. 278, 286,—

"The relation existing between . . . as parent and child, . . . and the like, is itself strong negative proof, and raises a presumption that no payment or compensation was to be made beyond that received by claimant at the time, which can only be overcome by clear and unequivocal proof to the contrary. The evidence must be clear, direct and positive that the relation between the parties was not the ordinary one of parent and child, or of brother and sister, but that of debtor and creditor, or of master and servant. To establish this new relation, it is obvious that some arrangement or contract to that effect must be shown."

See also *Estate of Goltz,* 205 Wis. 590, 238 N. W. 374; *Estate of Ghent,* 217 Wis. 631, 633, 259 N. W. 865; *Estate of Shimek,* 222 Wis. 98, 266 N. W. 798.

These rules in relation to that presumption are likewise applicable to services rendered elsewhere than in or about the house or family household under such circumstances. See *Fisher v. Fisher,* 5 Wis. 472; *Kaye v. Crawford,* 22 Wis.

*320; *Pellage v. Pellage,* 32 Wis. 136; *Wells v. Perkins,* 43 Wis. 160; *Manseau v. Mueller,* 45 Wis. 430; *Byrnes v. Clark,* 57 Wis. 13, 14 N. W. 815; *Estate of Kessler,* 87 Wis. 660, 59 N. W. 129; *Estate of Blohm,* 211 Wis. 421, 248 N. W. 407. That presumption and the applicant's testimony as quoted above, in connection with the other evidence on the subject, warranted finding that there was no agreement or contract of employment between the father and the applicant in respect to compensating him for the assistance which he gave his father; that the applicant's work in thus assisting his father was performed gratuitously without any expectation of receiving compensation; and that the applicant received nothing therefor as compensation or otherwise than that he continued to be furnished gratuitously the support which his father provided voluntarily.

It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.