Estate of Grossman : Painter, Respondent, vs. Estate of Grossman and another, Appellants.

*April 10—May 13, 1947.*

*Sarto Balliet* of Appleton, for the appellants.

*A. W. Ponath* of Appleton, for the respondent.

BARLOW, J.   The question presented is whether a daughter who was employed and maintained living quarters in the city of Milwaukee, Wisconsin, can recover for services rendered in caring for her mother and father who lived at Dale, Wisconsin, where there was no express contract to pay for such services.

The presumption is that the services so rendered were gratuitous.   *Taylor v. Thieman* (1907), 132 Wis. 38, 111 N. W. 229; *Estate of Goltz* (1931), 205 Wis. 590, 238 N. W. 374; *Miller v. Estate of Bell* (1937), 224 Wis. 593, 273 N. W. 67. It was therefore incumbent upon the claimant to prove an express contract by direct and positive evidence or to prove by unequivocal facts and circumstances that which is the equivalent of direct and positive proof of an express contract.   *Hall v. Finch* (1871), 29 Wis. 278; *Tyler v. Burrington* (1876), 39 Wis. 376; *Pellage v. Pellage* (1873), 32 Wis. 136; *Leitgabel v. Belt* (1900), 108 Wis. 107, 83 N. W. 1111; *Estate of Goltz, supra.*

The trial court allowed the full amount of the claim, and appellant here claims there was no evidence submitted by claimant to rebut the presumption of gratuity for services rendered.   This requires an examination of the evidence.

August Grossman died testate on the 13th day of December, 1945, at Dale, Wisconsin, where he had operated a lumberyard adjacent to his home.   He was an aged man, residing alone after his wife's death on January 10, 1942.   Two children survived him, Velma Grossman Painter, who resided in Milwaukee, Wisconsin, and Walter Grossman, who entered the army during World War II and remained there until the close of the war and after his father's death.   August Grossman left an estate appraised at $8,378.44, personal property owned jointly by the deceased and his daughter, Velma Grossman Painter, appraised at $4,625, and personal property

owned jointly by the deceased and his son, Walter Grossman, appraised at $7,942.89. In 1942, he deeded the homestead to claimant, reserving the life use of the property in himself. This property was appraised at $2,750. He also left a will, wherein he gave claimant the sum of $500 and divided the balance of his estate equally between claimant and her brother.

Claimant was employed as a waitress in the coffee shop at the Schroeder Hotel in Milwaukee, Wisconsin, for fifteen years prior to the death of her father. The testimony is undisputed that from salary and tips she earned approximately $200 a month. During that time, and prior to her mother's illness, she made an average of a trip a month to Dale to visit her parents. Anna Grossman, her mother, became ill in 1941, and was taken to a hospital at Appleton, Wisconsin, on December 1, 1941, where she died January 10, 1942. Claimant went to Dale November 30, 1941, and remained there until February 1, 1942, when she returned to Milwaukee and resumed her work at the Schroeder Hotel.

Claimant makes claim for $4 per day for the time spent at the hospital caring for her mother and $2 per day for the time spent at home after the death of her mother until February 1, 1942. Thereafter she made trips to Dale about twice a month, spending two or three days on each trip, until July 1, 1942, when her father became ill. She cared for him in his home from July 1, 1942, to August 31, 1942, inclusive. Claim is made for twenty-seven days at $4 per day while he was confined to his bed and thirty-five days at $2 per day when he was not confined to his bed. Thereafter she continued to make trips to Dale on the average of about twice a month during the balance of 1942 and the years 1943, 1944, and 1945, spending two or three days at home on each trip. November 22, 1945, her father again became ill, so she remained at home from November 22d until December 13, 1945, on which date he died. Claim is made for services at $3 per day from Novem-

ber 22d until November 28, 1945, and $6 per day from November 29th to December 13, 1945.

During May, 1943, claimant was home thirteen days; during June, 1943, nineteen days; and during July, 1943, seventeen days. Claim is made at $3 per day for each of these days. Claim is made for $2 per day for the days she was at home during the semimonthly trips. Further claim is made for two hundred sixteen trips from Milwaukee to Dale and return at $3 per trip to cover travel expenses, or a total of $648. The distance between Milwaukee and Dale, depending upon the route of travel, is at least one hundred miles.

Claimant maintained an apartment in Milwaukee for about thirteen years prior to the death of her father, including the entire period for which this claim for services is made. The evidence is undisputed that she went home on November 30, 1941, at the request of her father, who informed her it would be necessary for her to come home and take care of her mother or he would have to obtain the services of a trained nurse. She cared for her mother at the hospital in Appleton every day from December 1, 1941, to January 10, 1942, being at the hospital from 7 o'clock in the morning until 5 o'clock in the afternoon, spending the nights in the home at Dale where she did such housework as she could. After the death of her mother she remained at home caring for the house until February 1, 1942, when she returned to Milwaukee. The next extended period at home was from July 1, 1942, when her father became ill with a heart ailment, until September 1, 1942, during which time she cared for him and did the necessary housework. The next extended period at home began on November 22, 1945, at which time her father again became seriously ill and she remained home caring for him and doing the housework until December 13, 1945, on which date he died.

After the death of the mother the father lived in the home alone. He had no one to care for him during his illness except this claimant, although there is testimony there was a

nurse there at one time. The testimony shows that the father requested her to come home and perform the services rendered for her mother. There is no testimony that he requested her to come home and care for him during his illness, but claimant lived a hundred miles away and immediately returned home and cared for him each time he was taken sick, and claimant was the natural person to turn to for assistance as the son, who lived at Appleton, was in service. The doctor testified the services rendered were necessary. In rendering these services she sacrificed an average of $8 per day which the father knew she could have earned if she had remained in Milwaukee, and she testified she expected compensation for such services.

Thus we have a daughter, maintaining her own living quarters more than a hundred miles from the home of her parents, gainfully employed, who returned home and cared for her mother during last sickness at the request of her father, and who twice later returned home immediately when her father was ill and without anyone to care for him, receiving information in some manner that he was ill and needed care, together with the sacrifice of a substantial amount of income on her part, seeking reasonable compensation for such services. It is said in *Tyler v. Burrington, supra,* p. 379, quoting from Addison, Contracts, 209:

"The intention of the parties to any particular transaction may be gathered from their acts and deeds, in connection with surrounding circumstances, as well as from their words. . . ."

While proof offered by claimant to overcome the presumption that the services were gratuitous is not too strong, it is considered sufficient to overcome the presumption and sustain the trial court in granting judgment for the services rendered during the extended periods above set forth.

The balance of the claim is for services rendered on semimonthly trips home made at her convenience between February 1st and July 1, 1942, and September 1, 1942, and No-

vember 22, 1945, together with the expenses of these trips. While claimant is to be complimented on the interest shown in her father and her desire to be helpful to him, and without doubt the father was happy to see her and such services as she rendered were helpful to him, nevertheless these trips home were no different than the trips she made home prior to the time her mother was taken sick, even though they may have been a little more frequent and the services rendered were somewhat greater. There is nothing to indicate that the father requested her to come home at the times in question, and certainly no parent would expect to pay a child for services when she occasionally drops in to visit for a day or two at a time. It follows that the balance of the claim for services and expenses of travel must be disallowed.

We conclude that the claim as filed for services rendered from December 1, 1941, to February 1, 1942, and from July 1, 1942, to August 31, 1942, and from November 22, 1945, to December 13, 1945, for a total of one hundred forty-seven days, amounting to $497 be allowed, and that the balance of the claim, including travel expense, be disallowed.

*By the Court.*—The judgment is modified as stated in the opinion, and affirmed as so modified.