ESTATE OF TULLOCH: WEBB, Claimant, Appellant, vs. LATIMER, Administrator, Respondent.

*December 4, 1951—January 8, 1952.*

For the appellant there were briefs by *Hale, Skemp, Nietsch, Hanson & Schnurrer* of La Crosse, and oral argument by *Thomas H. Skemp*.

For the respondent there was a brief by *Martin Gulbrandsen* of Viroqua, and *Donovan, Gleiss, Goodman, Breitenfield & Gleiss* of Sparta, and oral argument by *William M. Gleiss*.

BROWN, J.   The court admitted almost all the testimony which Webb offered regardless of its being hearsay or otherwise incompetent and even with this testimony it seems quite clear that Tulloch never made any express agreement to compensate Webb in consideration of services to be rendered. From 1925 to 1938 Webb was brought up and lived in Tulloch's family and from 1933 to 1938 his wife lived there also. There is no suggestion that Tulloch ever charged them for their maintenance or that during this period Webb claimed he was to be paid for what he did. In such circumstances there is a presumption that services and accommodations are rendered gratuitously by the members of the family to each other. *Estate of Engels* (1951), 259 Wis. 62, 47 N. W. (2d) 335; *Estate of Goltz* (1931), 205 Wis. 590, 238 N. W. 374. Direct and positive evidence of an express contract for payment is required to rebut the presumption. Ibid.

After 1938 Webb lived apart and while it is apparent that he did some work for Tulloch he kept no records and could not say definitely what he did or when he did it. While his claim was for practically full-time services and he testified that he received no pay at all from Tulloch, it is established that he acquired considerable property and that he made a living for his wife and small son. If he was not paid by Tulloch, as he says, it is clear that the time he spent in serving Tulloch was not so great as to prevent self-support.

Of course, sec. 330.21 (5), Stats., limits the compensation which Webb might recover on *quantum meruit* to the last

two years before Tulloch's death. In this period Tulloch spent much of the time in the hospital in La Crosse or with his sister in that city and a witness testified that she, the witness, came daily to Tulloch's home while he was in Victory during these last years to care for him and get his meals, tend the fire, dress him in the morning, and put him to bed at night. These are the principal services for which Webb demands compensation for the two years preceding Tulloch's death, and the witness denied that Webb rendered them.

This is not an appeal where the trial court has found that services were rendered and has allowed compensation and we are asked to determine whether the evidence supports the finding. On the contrary, the court found the evidence did not support the claim and our problem is to discover whether there is such clear and satisfactory evidence, either of a contract for payment or of services rendered, and their value, which is of such probative force that the trial court committed error in finding against it. Such evidence is lacking in this record. Counsel contends that the claimant, his wife, and his mother, who testified in his behalf, are retarded mentally and justice requires that little should be required of them in the way of proof. The record shows that the learned trial judge was most considerate of them in admitting their testimony, but the best that can be said for it is that it shows their hope that Webb would be generously treated by his stepfather. We find no proof that there was any agreement for compensation nor can we discover to our own satisfaction evidence of services rendered and values earned which is sufficiently definite to support an award to the claimant if the trial court had seen fit to make one. The disappointment of the claimant and his family is due to a possible lack of generosity on Tulloch's part but not to any failure to honor legal obligations. Moreover, if the mental condition of the claimant is as bad as his counsel says, his value as an employee is

necessarily affected. The record shows that in 1945 Tulloch gave a house and land to Webb and Webb's son as joint tenants, reserving a life estate in himself, and when the life estate was extinguished the property was worth $4,500. There is also evidence of income received by Webb while working for others and as a share cropper on Tulloch's land, and no evidence that Tulloch ever charged or expected to charge him for the support which he and his family received while they lived under Tulloch's roof. Tulloch is not here to speak and, upon this record, we would hesitate to condemn the deceased for a breach of moral obligation.

We consider that the findings of the learned county court are in accord with the evidence, and its judgment dismissing the claim and the complaint must be affirmed.

*By the Court.*—Judgment affirmed.